**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **CIVIL ACTION NO. 1:21-CV-3413-SDG** |
| **Plaintiff,** | |
| **v.** | |
| **JOHN J. WOODS, ET AL.,** | |
| **Defendants.** | |

## RECEIVER'S TENTH REPORT

A. Cotten Wright as Receiver (the "Receiver") for the assets of Defendant Horizon Private Equity, III, LLC (the "Horizon Assets") and the ownership interests that Defendant John J. Woods ("Woods") has in the following assets: (i) Livingston Group Asset Management Company d/b/a Southport Capital ("Southport Capital") and its holding company, Livingston Southport Investors, LLC (the "Southport Capital Interests"), (ii) Lakewood Ranch Risk Management LLC d/b/a Southport Capital Risk Management (the "Southport Capital Risk Management Interests"), and (iii) Chattanooga Professional Baseball, LLC (the "Chattanooga Baseball Interests," and together with the Southport Capital Interests and the Southport Capital Risk Management Interests, the "Woods Assets"), files this *Receiver's Tenth Report* (this

"Report") pursuant to this Court's *Order Appointing Receiver* (the "Receivership Order") entered on September 1, 2021.[1]  The Horizon Assets and the Woods Assets are referenced together herein as the "Receivership Assets" or the "Receivership Estate."   This report details the Receiver's activities for the period of October 1, 2023 through December 31, 2023 (the "Reporting Period") in conformance with paragraphs 54 and 55 of the Receivership Order.

## I.     SUMMARY OF RECEIVER'S ACTIVITIES

### A.     Summary of Operations.

By the date of the Receivership Order, Horizon had permanently ceased operations except for renting two commercial properties, discussed further below. The Receivership Order provided that the Receiver would have no authority to manage the underlying business operations of the Woods Assets.

(1)     Receivership Operations.  Early in the case, the Court entered Orders approving the Receiver's applications to employ the law firms of Ragsdale Beals Seigler Patterson & Gray, LLP and Grier Wright Martinez, PA to represent her in this case.  The Receiver also engaged the firm of Middleswarth, Bowers & Co., L.L.P. ("Middleswarth Bowers") as her accountants and business valuation advisor

---

[1]     On September 10, 2021, the Court entered its Order Amending Order Appointing Receiver to Correct Typographical Errors.

and Stretto, Inc. to provide certain software, noticing, website, and electronic case management services.  The Receiver set up a dedicated phone line for calls from investors in Horizon (the "Investors," each an "Investor") at 704-332-0216 and created an email address for the receivership (the "Receivership") at horizonreceivership@grierlaw.com. The Receiver arranged for court documents to be available at horizonreceivership.com.

The Receiver determined that additional professional assistance with evaluating certain of the Receivership Assets would be beneficial to the Receivership Estate.  During a prior reporting period, the Court authorized the Receiver to extend the previously approved engagement of Middleswarth, Bowers to include business valuation services and authorized the Receiver to engage Great Neck Realty Company of North Carolina, LLC ("Great Neck") to serve as the Receiver's real property advisor.

On October 21, 2021, the Court entered an Order approving the Receiver's proposed Liquidation Plan relative to the Receivership Assets.

(2)     Rental Property Operations.  When this case was filed, Horizon was the owner of two real property assets both of which were leased to Southport Capital: an office condominium in Atlanta, Georgia (the "Atlanta Office") located at 3621 Vinings Slope SE, Suite 4450, Atlanta, Georgia, 30339, and a building located at

112 Mill Street, Greenville, KY, 42345 (the "Greenville Office").   As indicated

below, during prior reporting periods, the Receiver collected a total of $36,000 in

rent for the Atlanta Office[2] and $7,500 in rent for the Greenville Office[3] before both

properties were sold.

(3)   Accounting. The Receivership Order charged the Receiver with

preparing:

> an initial accounting of all funds received by the defendants pursuant to
> the scheme described in the Commission's Complaint and of the
> disposition and use of said proceeds (the "Initial Accounting") . . . [to]
> include . . . the name and address of each investor in [Horizon] from
> 2008 to the present; the amount each investor invested in [Horizon] and
> the dates of each investment; the total amount received from investors
> in [Horizon]; all amounts returned to investors in [Horizon] and the
> dates of each interest payment or return of capital; and an explanation
> of what happened to any investors funds that were not returned to
> investors to the extent practicable.

(Doc. No. 26, p. 27.)   Although the Initial Accounting was to be completed within

90 days of the Receivership Order, a Consent Order extended that deadline to April

29, 2022.

On April 29, 2022, the *Receiver's Report of Initial Accounting* was filed (the

"Initial Accounting"), reflecting a preliminary report on Investor transactions with

Horizon from 2008 through the date of the Receivership Order.   That information

---

[2]     Asset #35 on Exhibit B.
[3]     Asset #34 on Exhibit B.

was derived from records provided by the S.E.C. after the Receivership Order was entered; documents provided in response to subpoenas served on banks and Provident Trust Group ("Provident Trust"); copies of Woods' Quicken files for Horizon; and some information from Oppenheimer & Co., Inc. ("Oppenheimer"). The Initial Accounting indicated that Horizon Investors put in $132,142,913.59, and received back, whether characterized as principal or interest, $59,016,198.31, resulting in a net loss of $73,126,715.28; however, those figures were not broken down as between the accounts of Investors who received more than was put in (the "Net Winners") and those who did not ("Claimants").

The Receiver's accountants continued to update and refine the Initial Accounting, and on June 30, 2022, the Receiver filed her *Receiver's Report of Final Accounting*, attaching a summary of investor activity (the "Summary of Investor Activity") that was redacted to protect investor privacy.

The Summary of Investor Activity was amended to adjust certain claims as a result of Investors' responses to the claim notices that they received as well as changes to the totals for Net Winner accounts following the Receiver's review of those accounts during a prior reporting period.

Prior revisions to the Summary of Investor Activity indicate that funds invested in Horizon ("Ins"), funds distributed to investors ("Outs"), and net losses

("Net"), which reflect the Investors' claims were as follows:

|  | Investors | Outs | Ins | Net Loss/Winnings |
|---|---|---|---|---|
| 82 | Net Winners | (21,721,400.74) | 19,532,595.66 | (2,188,805.08) |
| 7 | Neutrals | (2,153,706.95) | 2,153,706.95 | $0.00 |
| 431 | Claimants | (42,603,866.56) | 113,220,201.25 | 70,616,334.69[4] |
| **520** |  | **(66,478,974.25)** | **134,906,503.86** | **68,427,529.61** |

Additional information regarding Net Winner accounts, Investors' claims, setoffs, and the like is provided below.

## B.     Cash on Hand.

On September 9, 2021, the Receiver established an account for the Receivership Estate at Metropolitan Commercial Bank, N.A. (the "Receivership Account").  In order to properly account for the proceeds of the sale of Southport Capital (the "Sale Funds")[5] and distributions on claims against Southport Capital (the "Claims Against Southport"), during a prior reporting period, the Receiver opened a separate bank account in the name of the Receivership (the "Sale Funds Account").[6]  Both accounts were established in conjunction with Stretto.  On

---

[4]     This figure does not reflect setoff settlements that were approved during a prior reporting period.

[5]     The Court entered an Order approving a settlement with Southport Capital, IBERIABANK, the Securities and Exchange Commission, and the Receiver on April 21, 2022 (the "Settlement and Sale Order"), which included approval of the sale of Southport Capital's assets, with the Sale Funds to be paid to the Receivership Estate and administered in accordance with that Order.

[6]     On June 7, 2022, the Court entered an Order establishing a claims process for the Claims Against Southport relative to claims against the Sale Funds.

September 7, 2022, the Receivership Account and the Sale Funds Account were moved to TriState Capital Bank ("TriState") through a transfer process agreed to by the Receiver and overseen by Stretto.

Upon receiving approval to make an initial distribution (the "Initial Distribution") to Claimants of $18,000,000 during a prior reporting period, the Receiver transferred that sum to a third receivership account from which distributions to Claimants have been made (the "Distribution Account"). During the Reporting Period, the Receiver made a second distribution of $2,500,000 from the Distribution Account (the "Interim Distribution").

During a prior reporting period, certain banking institutions in the United States failed, causing concern for the safety of any accounts that held more than $250,000, the maximum amount covered by F.D.I.C. insurance. Therefore, in order to ensure that all Receivership funds are protected, on May 5, 2023, the Receiver signed a deposit placement agreement with IntraFi Network Deposits and TriState Bank relative to a program whereby funds on deposit will be transferred to other institutions so as to keep any one bank balance at $250,000 or less. The total amount of the Receivership funds is readily available to cover any approved disbursements, however. The Receiver consulted with the S.E.C. by phone and did not receive an objection given that this step was taken as a means of protecting Horizon's funds.

At the close of the Reporting Period, total funds for the Receivership Account came to $1,266,535.87, and funds in the Sale Funds Account totaled $1,026,247.74. The balance in the Distribution Account, less outstanding checks, was $39,078.91 when the Reporting Period closed, reflecting the distributive amounts for three claims, one held by an Investor who did not return an Investor Certification Form as discussed below, and two others whose distributive amounts were less than $100.[7] No funds on deposit in the bank accounts were encumbered by liens.

During the Reporting Period, the Court entered Orders allowing applications for compensation relative to the prior reporting period that were filed on behalf of the Receiver's professionals.  All approved fees and expenses had been paid such that as of the close of the Reporting Period, there were no unpaid administrative expenses that had been approved by the Court.

**C.     Receipts and Disbursements**

A report as to banking activity in the Receivership accounts through December 31, 2023 is attached as **Exhibit A**.

---

[7]     The distribution procedures ("Distribution Procedures") applicable in this case are set out in the *Order Granting Receiver's Motion for Order Approving Miscellaneous Distribution Procedures and Other Related Relief*, Doc. No. 349.

**D.     Description of Known Receivership Property.**

**Exhibit B** consists of a list of the Receivership Assets as of the close of the Reporting Period.   The Receiver's initial source for information about the Horizon Assets was a chart prepared by Woods listing the Receivership Assets and his estimate of their value, which the Receiver understood reflected estimates of the completion values of certain of the assets rather than their value as of the date of the Receivership Order.   Later, Woods provided information as to the net amount invested in the assets as of August 23, 2021 and information about certain additional assets; that information is included in Exhibit B.[8]

Unless an asset has been liquidated,[9] the values reflected here and in Exhibit B do not necessarily reflect actual market value. The Receiver has continued investigating a potential liquidation of one remaining asset that appears to have value for the Receivership Estate.   There are other assets, however, that the Receiver has determined have no value; those assets will be the subject of a future motion to abandon.

---

[8]     The asset values shown on Exhibit B reflect the net amounts that Woods indicated were invested in the assets.  In most cases, the Receivership Estate held only fractional interests in the assets. The lien amounts shown reflect the full extent of any liens on the assets without regard to the fractional nature of Horizon's ownership interests.

[9]     An asset liquidation is shown as a "sale" on Exhibit B, and the funds obtained for each liquidated asset are listed as deposits on Exhibit A.

The asset list has been updated as the Receiver either learned more about the values of the assets or as assets were liquidated.  Below is a brief description of the status of the Receivership Assets as of the close of the Reporting Period.

**The Horizon Assets**

(1)   <u>Bank Funds.</u>  Early in this case, the Receiver obtained turnover of funds held in accounts owned by Horizon at TD Ameritrade[10] and IBERIABANK[11] as set out in Exhibit A.   During a prior reporting period, Provident Trust Group turned over $999.98[12] to the Receivership Estate.   The Receiver has not identified any additional bank funds on deposit in Horizon's name.

(2)   <u>Real Property.</u>  There were two parcels of real property owned by the Receivership Estate when this case was filed.  Both were sold during prior reporting periods.

(a)   Atlanta   Office.[13]   The   Receivership   Estate   owned   an   office condominium in Atlanta that had been leased to Southport Capital.  That asset was sold, and the Receivership Estate realized net proceeds of $142,703.89 after a bank lien, taxes, and closing costs were paid.  Later, First Horizon Bank refunded $122.83

---

10    Asset #1 on Exhibit B.
11    Asset #14 on Exhibit B.
12    Asset #39 on Exhibit B.
13    Asset #21 on Exhibit B.

for an overpayment of mortgage interest relative to the Atlanta Office, bringing the net sale proceeds to $142,826.72.

(b)     Greenville Office.[14]  The Receivership Estate owned property in Greenville, KY that generated net sale proceeds of $108,959.89 for the Receivership Estate.

(3)     <u>Investments in Limited Liability Companies, Limited Partnerships, and Private Equity Funds</u>.  Horizon funds were invested in a number of limited liability companies, limited partnerships, or private equity funds that hold interests in projects in varying stages of development.  The information provided here reflects a summary of the status of those assets as of the close of the Reporting Period.

(a)     Athletafied / RecruitU and Hardwood Sports, LLC.[15]  The Receivership Estate owns a 47.5% interest in Hardwood Sports, LLC, which in turn owns a 25% investment interest in a sports data collection company, Recruit U d/b/a Athletafied, that evaluates the skills of high school athletes.  According to information received from Woods, the initial investment in this entity was $110,000, and Horizon made a loan to the entity for $343,000, resulting in a net investment in Recruit U of $453,000.  Woods separately indicated that the net investment in Hardwood Sports,

---

[14]     Asset #20 on Exhibit B.
[15]     Asset #2 on Exhibit B.

LLC was $333,000.

The Receiver's research, including calls with the other members and an attorney for Hardwood, LLC, and Athletafied/Recruit U, revealed that Hardwood, LLC was formed as a holding company for Athletafied/ Recruit U.  Further, it owns Highlight U, which was formed to be a social media platform and recruiting service for high school athletes.  It appears that although those entities were formed, they were not successful and are not currently operating entities.   At present, none of the entities have employees, clients, or any assets.  Therefore, the Receiver believes the value to the Receivership Estate of the interests in these entities is $0.00.

(b)    Battlefield Parkway Partners, LLC.[16]   This entity was one of six in which Horizon and Clint Wolford were partners.  The Receiver negotiated with Mr. Wolford regarding a redemption of the interests in all the Wolford-Horizon owned entities: Battlefield Parkway Partners, LLC, East Brainard Partners, LLC, EBES Partners LLC, Highway 153 Partners, LLC, The Shoppes of Valley Brook, LLC, and WW Partners LLC.  During prior reporting periods, the Receiver obtained Court authority to enter into a redemption agreement and to assign the Receivership Estate's 50% interest in this entity along with the interests in the five other limited liability companies for a total payment of $2.7 million, consummated that transfer,

---

[16]      Asset #3 on Exhibit B.

and deposited the $2.7 million redemption price to the Receivership Estate account. Of the redemption price, $0.00 was assigned to Battlefield Parkway Partners due to a lack of equity in the underlying real property located at 2705 Battlefield Pkwy, Fort Oglethorpe, GA.

(c)     BI Developments LLC.[17]  The Receivership Estate owned a 40% interest in an entity formed to redevelop a former JC Penny store in Chattanooga, TN.[18]  That development project was subject to a $1.7 million lien held by First Volunteer Bank that Woods caused Horizon to guaranty.  Woods had indicated that Horizon's net investment in this asset was $473,008.33.

During a prior reporting period, the Receiver requested authority to sell the interests in BI Developments, LLC, BI Developments II, LLC, and BI Developments III, LLC to the other holders of interests in those entities for a combined sale price of $100,000, $33,500 of which was allocated to BI Developments. Counsel for Woods expressed concerns about the adequacies of that offer, which were resolved by adding a provision for future payments to Horizon of a portion of any net profits resulting from sales of the underlying real properties should such sales occur within 365 days of the closing date.  The Court approved the sale of the related interests for

---

[17]     Asset #6 on Exhibit B.
[18]     Initially, the Receiver was told that the Receivership Estate held a 50% interest in BI Developments LLC.

$100,000 plus the contingency relative to future sales of the underlying real properties. The Receiver has been informed that no such sale occurred.

(d)   BI Developments II, LLC.[19]  The Receivership Estate owned a 50% interest in an entity formed to redevelop a former Sears store in Chattanooga, TN.[20] This development project was subject to a $3 million lien held by First Volunteer Bank that Woods caused Horizon to guaranty.  Woods indicated that Horizon's net investment in this asset was $1,206,580.  As noted above, the interests in this asset were sold along with the Receivership Estate's interests in BI Developments, LLC and BI Developments III, LLC for a combined total of $100,000, $57,800 of which was allocated to BI Developments II, subject to a future payment should the underlying real property sell within 365 days. The Receiver has been informed that no such sale occurred.

(e)   BI Developments III, LLC.[21]  The Receivership Estate owned a 70% interest in an entity formed to develop a parking area adjacent to a former Logan's Restaurant in Chattanooga, TN.  This development project was subject to a $385,281 lien held by First Volunteer Bank that Woods caused Horizon to guaranty.  Woods

---

[19]    Asset #4 on Exhibit B.

[20]    Initially, the Receiver was told that the Receivership Estate held a 40% interest BI Developments II, LLC.

[21]    Asset #5 on Exhibit B.

indicated that Horizon's net investment in this asset was $126,000.  As noted above, the interests in this asset were sold along with the Receivership Estate's interests in BI Developments, LLC and BI Developments II, LLC for a combined total of $100,000, $8,700 of which was allocated to BI Developments III, plus a future payment should the underlying real property sell within 365 days.  The Receiver has been informed that no such sale occurred.

(f)     Birchwood II, LLC.[22]  The Receivership Estate owned a 30% interest in an operating landfill in Hamilton County, TN, which was subject to multiple liens totaling more than $1.6 million that were held by Pinnacle Bank.  Woods indicated that Horizon's net investment in this asset was $330,874.  During a prior reporting period, the Receivership Estate's interest in this entity was liquidated for $100,000.

(g)     BW Hunting Club, LLC.[23]  The Receivership Estate held a 50% interest in an entity that owns property adjacent to the landfill owned by Birchwood II, LLC, in Hamilton County, TN.  Woods indicated that Horizon's net investment in this asset was $121,950.36.  During a prior reporting period, the holder of the other 50% interest in this asset purchased the Receivership Estate's interest for a purchase price of $151,935.

---

[22]     Asset #17 on Exhibit B.
[23]     Asset #7 on Exhibit B.

(h)     Croft and Bender Fund.[24]  The Receivership Estate held a 0.9218 % interest in a Nashville, TN private equity fund.  During a prior reporting, the Receivership Estate's interest in this asset was sold for $105,875.  In other prior reporting periods, the Receivership Estate received $134,621.51 in distributions on this asset, resulting in a total recovery of $240,496.51. Woods had indicated that Horizon's net investment in this asset was $112,731.

(i)     Dynamo Fund I, L.P.[25]  The Receivership Estate held a 2.7778% investment in a Nashville, TN based private equity fund. Woods indicated that Horizon's net investment in this asset was $408,412.  During the prior reporting period, the Court authorized the Receiver to sell the Receivership Estate's interest in this asset to other limited partners in the Fund for a sale price of $1,275,000.  In addition, during another prior reporting period, a distribution of $55,167 was wired to the Receivership bank account, bringing the total amount received for this asset to $1,330,167.

(j)     Dynamo-Skupos, LLC.[26]  The Receivership Estate held an interest in a San Francisco based start-up company, which is a special purchase vehicle of Dynamo Fund, I, L.P.   During the prior reporting period, the Court authorized the

---

[24]     Asset #9 on Exhibit B.
[25]     Asset #16 on Exhibit B.
[26]     Asset #25 on Exhibit B.

Receiver to sell the Receivership Estate's interest in this asset to other limited partners in the Fund for a sale price of $57,866.  Woods had indicated that Horizon's net investment in this asset was $57,866.

(k)     Dynamo-Stord SPV III.[27]  The Receivership Estate held an interest in an Atlanta-based software driven warehousing and fulfillment company, which is a special purchase vehicle affiliated with Dynamo Fund I, L.P.  During the prior reporting period, the Court authorized the Receiver to sell the Receivership Estate's interest in this asset to other limited partners in the Fund for a sale price of $58,831.  Woods had indicated that Horizon's net investment in this asset was $50,583.

(l)     East Brainard Partners LLC.[28]  This entity was one of six in which Horizon and Clint Wolford were partners. It owns a strip shopping center located in Chattanooga, TN that is subject to a $3.7 million lien held by Southeast Bank.  Woods indicated that Horizon's net investment in this asset was $1,292,288.

As noted above, the Receiver negotiated with Mr. Wolford regarding a redemption of the interests in all the Wolford-Horizon owned entities: Battlefield Parkway Partners, LLC, East Brainard Partners, LLC, EBES Partners LLC, Highway 153 Partners, LLC, The Shoppes of Valley Brook, LLC, and WW Partners

---

[27]     Asset #26 on Exhibit B.
[28]     Asset #10 on Exhibit B.

LLC.  During prior reporting periods, the Receiver obtained Court authority to enter into a redemption agreement and to assign the Receivership Estate's 50% interest in this entity along with the interests in the five other limited liability companies for a total payment of $2.7 million, consummated that transfer, and deposited the $2.7 million redemption price to the Receivership Estate account.  Of the redemption price, $740,000 was assigned to the Receivership Estate's interest in East Brainard Partners.

(m)   EBES Partners LLC.[29]   This entity is one of six in which Horizon and Clint Wolford were partners.  It was formed to develop property that has been rezoned for an apartment complex and is subject to a $2.7 million lien held by First Volunteer Bank.  Woods indicated that Horizon's net investment in this asset was $2,794,167.

As noted above, the Receiver negotiated with Mr. Wolford regarding a redemption of the interests in all the Wolford-Horizon owned entities: Battlefield Parkway Partners, LLC, East Brainard Partners, LLC, EBES Partners LLC, Highway 153 Partners, LLC, The Shoppes of Valley Brook, LLC, and WW Partners LLC.  During prior reporting periods, the Receiver obtained Court authority to enter into a redemption agreement and to assign the Receivership Estate's 50% interest in

---

[29]    Asset #11 on Exhibit B.

this entity along with the interests in the five other limited liability companies for a total payment of $2.7 million, consummated that transfer, and deposited the $2.7 million redemption price to the Receivership Estate account.  Of the redemption price, $800,000 was assigned to the Receivership Estate's interest in EBES Partners.

(n)     Highway 153 Partners LLC.[30]   This entity is one of six in which Horizon and Clint Wolford were partners. This entity owns a strip shopping center in Hixson, TN and is subject to liens held by Southeast Bank that as of December 5, 2022, exceeded $4 million.  Woods indicated that Horizon's net investment in this asset was $1,961,497.

As noted above, the Receiver negotiated with Mr. Wolford regarding a redemption of the interests in all the Wolford-Horizon owned entities: Battlefield Parkway Partners, LLC, East Brainard Partners, LLC, EBES Partners LLC, Highway 153 Partners, LLC, The Shoppes of Valley Brook, LLC, and WW Partners LLC.  During prior reporting periods, the Receiver obtained Court authority to enter into a redemption agreement and to assign the Receivership Estate's 50% interest in this entity along with the interests in the five other limited liability companies for a total payment of $2.7 million, consummated that transfer, and deposited the $2.7 million redemption price to the Receivership Estate account.  Of the redemption

---

[30]     Asset #13 on Exhibit B.

price, $50,000 was assigned to the Receivership Estate's interest in Highway 153 Partners.

(o)    MVP Studios, LLC.[31]   Woods reported that Horizon owned a 50% interest in an entity formed to find film locations in Atlanta, GA, indicating that the value of that interest  was $163,000.  The Receiver's research revealed that Horizon did not own an equity interest in MVP Studios, LLC ("MVP"), however, but rather that MVP owed Horizon $163,000 pursuant to a promissory note and is thus a debtor of the Receivership Estate (the "MVP Debt").   The Receiver's research, including calls with the co-owner and review of financial records, revealed that MVP has no ongoing operations and no assets.   The financial information provided showed substantial liabilities.

During a prior reporting period the Receiver agreed, subject to Court approval, to accept the sum of $5,000 as settlement in full of the MVP Debt.   On July 20, 2023, the Court entered an Order approving that settlement;[32] MVP has paid the settlement amount in full.

(p)    Prepstar LLC.[33]   The Receivership Estate holds an interest in an entity that owns a Los Angeles based football magazine.  Woods indicated that Horizon's

---

[31]    Asset #19 on Exhibit B.
[32]    Doc. No. 425.
[33]    Asset #22 on Exhibit B.

net investment in this asset was $115,500.  During a prior reporting period, the Receiver's research, including calls with the prior president of the entity, indicated that this entity was no longer operating.  Thereafter, however, counsel for Woods forwarded contrary information to the Receiver.  The Receiver has been unable to verify that this asset has value for the Receivership Estate and anticipates including this interest in a future motion to abandon.

(q)    ProNvest, Inc.[34]  The Receivership Estate owned an interest in an entity that specializes in retirement planning and investment management.  Woods indicated that Horizon's net investment in this asset was $100,000.  During a prior reporting period, the Receiver negotiated as to the liquidation of Horizon's 214.55 shares of preferred B stock in ProNvest and cancelation of a Warrant for the purchase of 474.1555 shares of common stock in ProNvest, reaching an agreed-to price of $25,000.  That price was agreed upon after the Receiver's business advisor Middleswarth Bowers reviewed historical financial information from ProNvest and advised the Receiver that it reflected fair value for the Horizon's investment.  During a prior reporting period, the Court entered an Order allowing the Receiver to accept $25,000 for this asset.

---

[34]    Asset #23 on Exhibit B.

(r)     Relevance Capital, III, LP.[35]  The Receivership Estate owns a 3.676% interest in a Tennessee-based private equity fund.  Woods indicated that Horizon's net investment in this asset was $427,500.  In the Receiver's opinion, this is the only asset that has value for the Receivership Estate that remains to be liquidated.  Most recently, the Receiver was informed that none of the other limited partners in this entity are interested in purchasing the Receivership Estate's interest. This is the last asset of value in the Receivership Estate; therefore, the Receiver intends to continue exploring a recovery on this asset as expeditiously as possible.

(s)     The Shoppes of Valley Brook LLC.[36]  This entity is one of six in which Horizon and Clint Wolford were partners.  It owns three parcels in Hixson, TN, and is subject to liens of about $1.1 million held by First Volunteer Bank.  Woods indicated that Horizon's net investment in this asset was $1,164,288.

As noted above, the Receiver negotiated with Mr. Wolford regarding a redemption of the interests in all the Wolford-Horizon owned entities: Battlefield Parkway Partners, LLC, East Brainard Partners, LLC, EBES Partners LLC, Highway 153 Partners, LLC, The Shoppes of Valley Brook, LLC, and WW Partners LLC.  During prior reporting periods, the Receiver obtained Court authority to enter

---

[35]     Asset #28 on Exhibit B.
[36]     Asset #24 on Exhibit B.

into a redemption agreement and to assign the Receivership Estate's 50% interest in this entity along with the interests in the five other limited liability companies for a total payment of $2.7 million, consummated that transfer, and deposited the $2.7 million redemption price to the Receivership Estate account. Of the redemption price, $650,000 was assigned to the Receivership Estate's interest in The Shoppes of Valley Brook.

(t)     U.S. Sampleworks, LLC.[37] The Receivership Estate owned a 12.069% interest in a company that sells online subscriptions to children's books. Woods indicated that Horizon's net investment in this asset was $50,000. During a prior reporting period, the Receiver was authorized to accept $12,000 for Horizon's interests in this entity, which has been paid in full.

(u)     WW Outdoor Media, LLC.[38]   This entity completed a project and disbursed profits to Horizon and other interest holders before the date of the Receivership. During a prior reporting period, the Receiver learned that there is approximately $9,100 in a bank account owned by this entity, but the final tax returns had not been filed. Accordingly, the Receiver values this asset at $0.00.

(v)     WW Partners LLC.[39]   This entity is one of six in which Horizon and

---

[37]     Asset #30 on Exhibit B.
[38]     Asset #32 on Exhibit B.
[39]     Asset #27 on Exhibit B.

Clint Wolford were partners. It owns restaurant property in Hixson, TN that is subject to a $1.35 million lien held by Pinnacle Bank. Woods indicated that Horizon's net investment in this asset was $522,308.

As noted above, the Receiver negotiated with Mr. Wolford regarding a redemption of the interests in all the Wolford-Horizon owned entities: Battlefield Parkway Partners, LLC, East Brainard Partners, LLC, EBES Partners LLC, Highway 153 Partners, LLC, The Shoppes of Valley Brook, LLC, and WW Partners LLC. During prior reporting periods, the Receiver obtained Court authority to enter into a redemption agreement and to assign the Receivership Estate's 50% interest in this entity along with the interests in the five other limited liability companies for a total payment of $2.7 million, consummated that transfer, and deposited the $2.7 million redemption price to the Receivership Estate account. Of the redemption price, $460,000 was assigned to the Receivership Estate's interest in WW Partners.

(w)   Car Wash Station, LLC.[40]  Post-receivership, one of the four parcels of land previously owned by The Shoppes of Valley Brook LLC was transferred, with the Receiver's consent, to Car Wash Station, LLC. During a prior reporting period, the Receiver negotiated with the co-owners regarding a buyout of the Receivership Estate's interest held in Car Wash Station, LLC, which was approved by the Court

---

[40]     Asset #36 on Exhibit B.

on May 20, 2022.  The Receivership Estate received a total of $112,535 for the interest in Car Wash Station, LLC.

(4)   Loans Receivable.  Horizon funds were loaned to various third parties as further described below.

(a)   Loan Receivable from Horizon Private Equity, LLC ("HPE").[41]  The Receivership Estate was owed $25,000 relative to an outstanding loan made to Horizon Private Equity, LLC on August 31, 2020 (the "HPE Loan").  After issuing a subpoena to HPE, the Receiver received information regarding the HPE Loan, HPE's claimed defenses to payment of the HPE Loan, and HPE's financial situation. The Receiver subsequently negotiated a settlement as to the HPE Loan that provided for a payment of $10,000, which was authorized by Court Order and has been paid in full.

(b)   Loan Receivable from James Woods.[42]  A loan that was made to James Woods in 2010 was satisfied in connection with resolution of a claim that Mr. Woods held against Southport Capital.  The Receivership Estate received $17,005.35 in full satisfaction of that obligation.

(c)   Loan Receivable from USA Sands LLC ("USA Sands").[43]   The

---

[41]   Asset #33 on Exhibit B.
[42]   Asset #31 on Exhibit B.
[43]   Asset #29 on Exhibit B.

Receivership Estate was owed $50,000 on a loan to a company involved in bomb detection technology pursuant to a November 25, 2019 Promissory Note (the "USA Sands Note"). After issuing a subpoena to USA Sands, the Receiver received information regarding the USA Sands Note, USA Sands' claimed defenses, and its financial situation. The Receiver subsequently negotiated as to a settlement of the amount due from USA Sands that provided for a payment of $10,000, which was authorized by Court Order and has been paid in full.

### The Woods' Assets

(1)   <u>Southport Capital Interests.</u>[44]  The Receivership Order provided that Woods' 66% majority interest in Southport Capital would be included as a Receivership Asset. During a prior reporting period, Southport Capital appointed a new board of directors that, in turn, engaged an investment advisor to market Southport Capital's assets for sale. The Court also entered an Order granting the Receiver's motion for a 180-day stay of actions against Southport Capital, its past or present officers, directors, managers, agents, employees, advisors, general or limited partners who may have been sued for or in connection with any action taken by them while acting in such capacity. That stay expired on October 11, 2022.

(a)   Liquidation of the Southport Capital Interests.  On April 21, 2022, the

---

[44]   Asset #18 on Exhibit B.

Court entered the Settlement and Sale Order providing for two payments on the purchase of Southport Capital's assets and certain settlements as to the disposition of those funds. The first installment of sale proceeds came to $3,088,042.96, which funds were deposited to the Sale Funds Account (the "First Installment").   An additional $76,841.03 from Southport Capital's bank account also was deposited in the Sale Funds Account.[45]   The second payment on the purchase of Southport Capital's assets came due during a prior reporting period (the "Second Installment") and resulted in a wire transfer of $1,219,145.76 to the Sale Funds Account.  The Settlement and Sale Order further provided that the Receivership Estate would receive $1,125,000 from a settlement between Southport Capital and Clay Parker.[46] During the Reporting Period, Mr. Parker made the final payment of $500,000 that was due on that settlement in a wire to the Sale Funds Account.

In accordance with the settlement between the S.E.C. and the Receivership Estate that was approved in the Settlement and Sale Order and a subsequent Order on claims against Southport,[47] a total of $823,475.63 has been transferred to the Receivership Account.  Additionally, IBERIABANK has been paid $2,398,048.51 in satisfaction of its secured claim against Southport Capital in accordance with the

---

[45]     Asset #37 on Exhibit B.
[46]     Asset #38 on Exhibit B.
[47]     Doc. No. 222.

Settlement and Sale Order.

(b)     Claims Against Southport.  During a prior reporting period, the Court entered an Order (the "Southport Claims Order")[48] approving a process for dealing with certain "Claims Against Southport" that were held by third parties and thus reflected claims against the Sale Funds.  Thereafter, the Receiver sent claim notices to all creditors of Southport Capital that had been identified to her, stating a claim submission deadline of July 20, 2022.

In Orders on the Receiver's multiple motions, the Court has authorized disbursements on the Claims Against Southport in accordance with the class designations and other provisions of the Southport Claims Order.   All Claims Against Southport that have been approved thus far have been paid with funds in the Sale Funds Account.

Additionally, the Receiver obtained authority to pay certain post-sale expenses of Southport Capital in amounts of $3,000 or less with funds in the Sale Funds Account. Jennifer Greene, Southport Capital's former Chief Compliance Officer, has continued to assist with issues related to winding up Southport Capital in exchange for hourly compensation of $50.00 plus expenses. Other ongoing expenses of Southport Capital are related to the storage of electronic documents

---

[48]     *Id*.

provided by Invicta Partners LLC and the minor expense of a storage unit to store hard copies of documents.  Payments on all such charges were current as of the close of the Reporting Period.

(c)     Southport Capital Tax Returns.  During a prior reporting period, the Receiver learned that Southport Capital had not filed tax returns for 2021, and there were no provisions in place for preparing and filing tax returns for 2022.  With the consent of the S.E.C. and counsel for Woods, the Receiver obtained Court authority to step into Woods' shoes to arrange to have Southport Capital's tax returns prepared and to sign them as Receiver.  The Receiver was authorized to have the accountants for the Receivership Estate to prepare Southport Capital's tax returns.  Federal and state income tax returns for 2021 and 2022 for Southport were filed. In instances where taxes were due, those amounts fell below $3,000 and were paid from the Sale Funds Account.  Certain small refunds were deposited to the Sale Funds Account.

(d)     Southport Capital Records and Personal Property.   On November 29, 2023, the Receiver filed a motion requesting an Order that would permit her to either dispose of or destroy Southport Capital's records and personal property.   That motion was granted in an Order entered on December 26, 2023.[49] With the assistance of Jennifer Greene, the Receiver anticipates arranging for the disposal or destruction

---

[49]     Doc. No. 487.

of Southport Capital's records and personal property in early 2024.

(2)     Southport Capital Risk Management Interests.[50]   The Receivership Order placed Woods's 79% interest in Southport Capital Risk Management (referenced hereinafter as "LWRRM") in the Receivership Estate.   During a prior reporting period, following a series of claims asserted against LWRRM that were beyond its ability to satisfy and the departure of that entity's manager, the Receiver obtained an Order allowing the interest in LWRRM to be abandoned as an asset of the Receivership Estate.

(3)     Chattanooga Baseball Interests.[51]   During a prior reporting period, the Chattanooga Baseball Interests were liquidated, resulting in a payment to the Receivership Estate of $1,875,684.

### E.     Description of Claims Held by the Receivership Estate.

During a prior reporting period, the *Receiver's Motion for Order Establishing Protocol for Pursuing Certain Clawback Actions* (the "Protocol Motion")[52] was filed.   Following a hearing on the Protocol Motion and the responses it drew, the Court directed the Receiver to devise a plan to address hardship allegations that may be asserted by Net Winners. On July 20, 2023, the Court entered an Order granting

---

[50]     Asset #15 on Exhibit B.
[51]     Asset #8 on Exhibit B.
[52]     Doc. No. 417.

the Protocol Motion (the "Clawback Order"), which provided a process for resolving any hardship concerns that Net Winners might raise.[53]

(1)   <u>Claims against Net Winners</u>.  The Receiver originally determined that there were 82 Horizon accounts that qualified as Net Winners in that those accounts received more in distributions than was invested. The Net Winner accounts ranged from in amounts of $501.37 to $110,534.50 more than was invested in Horizon.  The Receiver learned, however, that 33 Net Winner accounts were held by Investors who had died either before or after this case was filed and determined that the anticipated costs of pursuing litigation against the decedents' estates of Net Winners or their heirs would likely outweigh any recovery for the Receivership Estate.

(a)   Setoff Settlements.  During a prior reporting period, the Court entered an Order granting a motion by the Receiver for approval of claims against Net Winners who also are claimants with respect to other accounts (the "Dual Account Holders") proposing settlements as to ten Net Winner accounts (the "Setoff Settlement Motion").  The Order on the Setoff Settlement Motion generally provided that the remaining balances of the allowed claims held by the Dual Account Holders would be reduced by the amount of their net winnings, or in two cases, further distributions on those claims would be waived.  One Investor agreed to return $8,000

---

[53]      Doc. No. 426.

to the Receivership Estate in addition to waiving further distributions given the disparity between that Investor's net winnings and allowed claims.

(b)     No-Look Settlements and Negotiated Settlements.  In accordance with the Clawback Order, the Receiver made demands on the holders of Net Winner accounts prior to and during the Reporting Period.  Eventually, nearly all of the Net Winners who responded agreed to No-Look Settlements[54] by returning 80% of their net winnings to the Receivership Estate.

As for negotiated settlements, during the Reporting Period the Receiver filed a motion requesting Court approval of settlements with certain Net Winners who either had some defenses to the Receiver's demand or agreed to pay 80% of their net winnings in installments (the "Net Winner Settlements").[55]  An Order was entered on December 26, 2023 granting that motion.[56]

Together, collections from Net Winners totaling $276,236 have been deposited to the Receivership Account.[57] An additional $75,808 will be transferred to the Receivership Account in early 2024, and further payments totaling $20,616 are to be collected over time in accordance with the Net Winner Settlements.

---

[54]     *See* Clawback Order at 3.
[55]     Doc. No. 481.
[56]     Doc. No. 486.
[57]     This total includes $8,000 paid in connection with a Setoff Settlement as reported herein.

(c)     Other Net Winner Issues.   Five Net Winners responded to the Receiver's demands with documentation of hardships during the Reporting Period, and those issues were resolved without the necessity of Court involvement.   Three holders of Net Winner accounts could not be located.   The Receiver chose not to pursue twelve Net Winner accounts due to the small amount of the net winnings and/or because applicable statutes of limitation had expired.   As noted herein, the Receiver entered into Setoff Settlements with respect to twelve Net Winner accounts.

(2)     Claims against Third Parties.   The Receiver and her counsel reviewed available information as to potential claims against third parties and requested authority to bring claims against Kathleen Lloyd, which was granted in the Clawback Order.   After making a demand on Ms. Lloyd and communicating with her attorney, the Receiver determined that it would not be in the best interests of the Receivership Estate to pursue that claim further.

**F.     List of Known Creditors**.

(1)     Investors.   Early in the case, the Receiver obtained an investor list that was prepared by Provident Trust and filed in this case on August 20, 2021 by the S.E.C. in connection with its *Plaintiff's Motion for a Temporary Restraining Order and Other Emergency Relief* filed on August 20, 2021.   As set out above, the

Receiver determined that were 431 Investors who held claims against the Receivership Estate.

(2)   <u>Secured Creditors</u>.   First Horizon Bank held a lien secured by the Atlanta Office property which was satisfied when that property was sold.   The Receiver has not identified any other claims that may be secured by Horizon's assets.

(3)   <u>Vendors.</u>   Certain expenses attributable to the Receivership Estate may be billed to and paid by the Receiver's law firm, in which case, those expenses are detailed in the firm's quarterly applications for compensation.   Additionally, the firm has paid for the cost of a storage unit that holds certain Southport Capital files, and the Receiver has reimbursed those expenses from the Sale Funds Account.   To the extent that any other vendor claims reflect Claims Against Southport, those expenses are paid in accordance with the Court's prior orders.

(4)   <u>Other Creditors</u>.   The Receiver did not identify any other creditors during the Reporting Period.

**G.     Status of Claims Proceedings**.

During the Reporting period, on November 9, 2023, the Receiver was authorized to distribute $2.5 million to Claimants in the Interim Distribution pursuant to an Order entered on November 7, 2023.[58]   Combined with the Initial

---

[58]     Doc. No. 469.

Distribution, the Interim Distribution resulted in Claimant recoveries of 29.09%.

**The Receiver anticipates requesting authority to make one more distribution, which will be the final distribution, in connection with closing this case**.

(1)    Claim Allowances.  During a prior reporting period, the Court entered an Order granting the Receiver's motion relative to procedures for verifying the Investors' Ins, Outs, and Nets so as to determine allowable claim amounts.  On July 8, 2022, the Receiver mailed claim notices ("Claim Notices") to Horizon Investors stating the total amount of the Ins, Outs, and Net claim amount for their accounts along with proof of claim forms for Investors to use if they disagreed with the Receiver's calculations.[59]  Thereafter, the Receiver took calls, responded to emails, reviewed proofs of claim, and answered letters from Investors who had concerns about the information on their Claim Notices.  Investors were made aware that the Receiver would assist any of them who wanted the Court to resolve a dispute as to their allowed claim amounts by filing the appropriate papers.  Eventually, all issues regarding Investors' Claims were resolved without requiring the assistance of the Court. Thus, some related accounts were collapsed together, some adjustments were

---

[59]    Memoranda were sent to Net Winners and the "Neutral" Investors who received back from Horizon the same amount that they invested.

made to the Claim amounts, and some minor errors in the calculations were corrected. In addition, during a prior reporting period, the Court entered an Order disallowing certain claims related to accounts that were opened and closed in the same amounts.

(2)   Claim Procedures.   The Receiver obtained Court approval for Distribution Procedures designed to ensure that the distribution process for Investors' claims is managed appropriately and efficiently. In accordance with the Court's Order on the Distribution Procedures, Investor Certification Forms were mailed to the Claimants on December 21, 2022 and were due to be returned within 180 days, resulting in a June 19, 2023 deadline. Following the Court's approval of the Initial Distribution, the Receiver mailed distribution checks to Investors who had returned their Investor Certification Forms, and the Receiver continued to make distributions as additional Investor Certification Forms were provided. As noted above, during the Reporting Period, the Receiver made her Interim Distribution on November 9, 2023.

Should any distribution check remain outstanding after 90 days, those checks will become non-negotiable, and the funds will be distributed to other Investors in the final distribution.[60] The Receiver will follow up with Investors who do not

---

[60]      Doc. No. 349 at 5-6.

timely negotiate their distribution checks.

During a prior reporting period, the Receiver made repeated attempts to reach Claimants who had not provided Investor Certification Forms.   In the end, two Claimants did not respond.   One such Claimant held a claim of less than $100 and, therefore, would not be entitled to a distribution based on the Distribution Procedures.[61] The other outstanding Investor Certification Form was for a decedent's estate; the Receiver's multiple attempts to contact that Claimant's heir did not draw a response.   One additional Investor was due to receive less than $100 from the Interim Distribution. Accordingly, out of the $20.5 million in approved distributions thus far, $39,078.91 reflects Unclaimed Property subject to re-distribution to other Claimants at the close of the case.[62]

The Distribution Procedures state that the Receiver may hold the distributive amounts relative to Unclaimed Property in reserve pending the ultimate disposition of Receivership funds but must periodically report to the Court as to her plan for the ultimate disposition of those funds.   The Receiver intends to redistribute any

---

[61]   The Distribution Procedures provide that de minimis distributions are deemed waived such that the funds will be redistributed to other Investors.  *Id*. at 5.

[62]   Unclaimed Property includes "any Distribution that would otherwise be payable to an Investor who fails to provide an Investor Certification Form for the Horizon account that gave rise to an Allowed Claim within 180 days of the notice of the Investor Certification Form[.]"  *Id*. at 6.

Unclaimed Funds Claimants in a final distribution to be made in accordance with a future Court Order following notice to Claimants.

(3)     Additional Information Regarding Claims.  During a prior reporting period, the Receiver was authorized to release contact information for Investors to an entity that has expressed interest in taking assignments of Investors' Claims in exchange for a one-time, discounted payment to the Investors with whom it contracts, subject to Investors' ability to opt-out of such disclosure.  The Receiver provided the names and mailing addresses of Investors who did not opt-out prior to the deadline to two claim buyers.

In response to multiple inquiries from Investors who were concerned that other Investors may obtain a double recovery from litigation against third parties, primarily, Oppenheimer, the Receiver proposed that the Court establish a procedure for adjusting the claims of Investors who obtain recoveries for their Horizon losses from third parties.  The Court denied that motion.

During the Reporting Period, the issue relative to Oppenheimer awards to certain Investors was raised again by Defendant Woods in a response to the Receiver's request for authority to make an Interim Distribution.[63]  The Receiver filed a reply generally supporting a setoff procedure as suggested in the Woods'

---

[63]     Doc. No. 456.

response.[64]   Mark and Lisa Wright, one a Net Winner and the other a Claimant, responded in opposition to any such claim adjustments.[65]   Following a hearing on October 26, 2023, the Court entered an Order authorizing the Interim Distribution and denying the request for authority to adjust the claims of those who also recover from Oppenheimer.[66]

## H.      Discovery and Litigation Matters.

During a prior reporting period, the S.E.C. filed a second amended complaint that did not assert claims against James Woods as the prior complaint had.   In addition, judgment was entered against Southport Capital and Horizon with the consent of the Receiver and counsel for Southport Capital.

Also, during a prior reporting period, the Court entered judgment against Woods in response to the S.E.C.'s motion for approval of a bifurcated settlement that would give the parties 60 days to attempt to resolve the issue of monetary relief. The Court previously authorized Woods to use funds in his retirement account to pay his legal expenses.   During the Reporting Period, Woods requested authority to liquidate certain personal assets to fund his anticipated criminal restitution, and that

---

[64]   Doc. No. 458.   The Receiver explained in her response that she only has limited information as to which Investors and Net Winners have asserted claims against Oppenheimer and any recoveries they have received.

[65]   Doc. No. 460.

[66]   Order, Doc. No. 469.

motion was granted in an Order entered on December 26, 2023.[67]

During prior reporting periods, Woods produced records to the Receiver and his attorneys turned over documents relative to Horizon that had been in a storage unit in Atlanta.  Those documents were scanned and added to the document database for the Receivership case.  In addition, copies of certain computer hard drives, email accounts, and/or files on a shared server of employees of Southport Capital and Southport Capital Risk Management were provided to the Receiver.

**I.  Ancillary Matters**.

FINRA Arbitrations.  As indicated above, certain Investors brought claims against Oppenheimer in FINRA[68]  arbitration matters seeking reimbursement for their losses in connection with their investments in Horizon.   The Receiver's information as to those matters is limited. During a prior reporting period, the Court entered an Order, with Oppenheimer's consent, authorizing the Receiver to produce documents to similarly situated Investor-claimants subject to certain confidentiality requirements.

---

[67]     Doc. No. 488.

[68]     FINRA is the Financial Industry Regulatory Authority.

Oppenheimer Issue.   During a prior reporting period, the Court denied, without prejudice, a motion brought by Oppenheimer requesting that the Court modify the Receivership Order to provide that the litigation stay in that Order does not apply to Oppenheimer.

Criminal Case Against Woods.   On March 14, 2023, the United States Attorney initiated a criminal action against Woods in the Northern District of Georgia, Case No. 1:23-cr-00064, asserting one claim for wire fraud pursuant to 18 U.S.C. § 1343 in connection with Woods' operation of Horizon.  Woods has pleaded guilty pursuant to a plea agreement and is scheduled to be sentenced at a hearing on February 1, 2024.  It is the Receiver's understanding that Investors were invited to provide victim impact statements to the U.S. Attorney's Office.  The Receiver plans to attend the sentencing hearing at her own expense.

Related S.E.C. Complaints.   On June 10, 2022, the S.E.C. filed a complaint against Michael Mooney, Britt Wright, and Penny Flippin, Case No. 1:22-cv-2320-SDG, in connection with the Horizon Ponzi scheme.  The Receiver is informed that Mr. Wright and Ms. Flippin have entered into a bifurcated settlement with the S.E.C.

On August 28. 2023, the S.E.C. filed a complaint against William V. Conn, Jr., Case No. 1:23-cv-3830-SDG, also in connection with the Horizon Ponzi scheme.

**J.      Receiver's Recommendations**.

The Receiver anticipates that this case might be ready to close by mid-2024, provided that all assets have been administered and any litigation matters have been resolved.  Meanwhile, the Receiver and her team continue to address issues that arise in this case as expeditiously as possible under the circumstances presented.

Respectfully submitted, this 16th day of January, 2024.

*/s/ A. Cotten Wright*
A. Cotten Wright, NC Bar 28162
Receiver and Attorney for Receiver
Grier Wright Martinez, PA
521 E Morehead Street, Suite 440
Charlotte, NC 28202
(704) 332-0207
cwright@grierlaw.com

*W. Russell Patterson, Jr.*
W. Russell Patterson, Jr. (GA Bar No. 566920)
Local Counsel for Receiver
W. Russell Patterson, Jr., P.C.
2806 N. Columbia Street, Suite A-#211
Milledgeville, GA 31061
(404) 588-0500 (Telephone)
wrpjr@rbspg.com

Exhibits:
    A. Receipts and Disbursements
    B. List of Assets

# EXHIBIT A

## RECEIPTS AND DISBURSEMENTS REPORT

**STANDARDIZED FUND ACCOUNTING REPORT**
**for Horizon Privite Equity III, LLC Receivership - Cash Basis**
**Receivership; 1:21-cv-3413-SDG**
**Reporting Period 10/01/2023  to 12/31/2023**

| FUND ACCOUNTING | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | **Beginning Balance (As of 10/01/2023)** | | | 4,337,915.42 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | 601,260.98 | | |
| Line 3 | **Cash and Securities** | | | |
| Line 4 | **Interest/Dividend Income** | | | |
| Line 5 | **Business Asset Liquidation   (Exhibit 1)** | | | |
| Line 6 | **Personal Asset Liquidation** | | | |
| Line 7 | **Third-Party Litigation Income** | | | |
| Line 8 | **Miscellaneous - Other** | | | |
| | **Total Funds Available (Lines 1-8):** | | 601,260.98 | 601,260.98 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Investors** | 2,499,951.01 | | |
| Line 10 | **Disbursements to Receivership Operations** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | 65,489.92 | | |
| *Line 10b* | *Business Asset Expenses     (Exhibit 1)* | 41,872.95 | | |
| *Line 10c* | *Personal Asset Expenses* | | | |
| *Line 10d* | *Investment Expenses* | | | |
| *Line 10e* | *Third-Party Litigation Expenses* | | | |
| | *1. Attorney Fees* | | | |
| | *2. Litigation Expenses* | | | |
| | *Total Third-Party Litigation Expenses* | | | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | | | |
| *Line 10g* | *Federal and State Tax Payments* | | | |
| | **Total Disbursements for Receivership Operations** | | 2,607,313.88 | 2,607,313.88 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | **Distribution Plan Development Expenses** | | | |
| | 1. Fees: | | | |
| | **Fund Administrator** | | | |
| | **Independent Distribution Consultant (IDC)** | | | |
| | **Distribution Agent** | | | |
| | **Consultants** | | | |
| | **Legal Advisers** | | | |
| | **Tax Advisers** | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | Total Plan Development Expenses | | | |
| *Line 11b* | **Distribution Plan Implementation Expenses:** | | | |
| | 1. Fees: | | | |
| | **Fund Administrator** | | | |
| | **Independent Distribution Consultant (IDC)** | | | |
| | **Distribution Agent** | | | |
| | **Consultants** | | | |
| | **Legal Advisers** | | | |
| | **Tax Advisers** | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification | | | |
| | Notice Publishing Approved Plan | | | |
| | Claimant Indentification | | | |
| | Claims Processing | | | |
| | Web Site Maintenance/Call Center | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. Federal Account for Investor Restitution | | | |
| | (FAIR) Reporting Expenses | | | |
| | *Total Plan Implementation Expenses* | | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | - |
| Line 12 | **Disbursement to Court/Other** | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment* | | | |
| | *System (CRIS) Fees* | | | |
| *Line 12b* | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other** | | | |

**STANDARDIZED FUND ACCOUNTING REPORT**
for Horizon Privite Equity III, LLC Receivership - Cash Basis
Receivership: 1:21-cv-3413-SDG
Reporting Period 10/01/2023 to 12/31/2023

|  |  |  |  |  |
|---|---|---|---|---|
|  | Total Funds Disbursed (Lines 9-11) |  |  | 2,607,313.88 |
| Line 13 | Ending Balance (As of 12/31/2023 ) |  |  | 2,331,862.52 |

| Line 14 | Ending Balance of Fund - Net Assets: |  |  |  |
|---|---|---|---|---|
| Line 14a | *Cash & Cash Equivalents    (Exhibit 1)* |  |  |  |
| Line 14b | *Investments* |  |  |  |
| Line 14c | *Other Assets or Uncleared Funds* |  |  |  |
|  | Total Ending Balance of Fund - Net Assets |  |  | - |

| Other Supplemental Information |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
|  | *Report of Items NOT to Be Paid by the Fund* |  |  |  |
| Line 15 | **Disbursements for Plan Administration Expenses Not Paid by the Fund** |  |  |  |
| Line 15a | Plan Development Expenses Not Paid by the Fund: |  |  |  |
|  | 1. Fees: |  |  |  |
|  | Fund Administrator |  |  |  |
|  | IDC |  |  |  |
|  | Distribution Agent |  |  |  |
|  | Consultants |  |  |  |
|  | Legal Advisors |  |  |  |
|  | Tax Advisors |  |  |  |
|  | 2. Administrative Expenses |  |  |  |
|  | 3. Miscellaneous |  |  |  |
|  | Total Plan Development Expenses Not Paid by the Fund |  |  |  |
| Line 15b | Plan Implementation Expenses Not Paid by the Fund |  |  |  |
|  | 1. Fees: |  |  |  |
|  | Fund Administrator |  |  |  |
|  | IDC |  |  |  |
|  | Distribution Agent |  |  |  |
|  | Consultants |  |  |  |
|  | Legal Advisors |  |  |  |
|  | Tax Advisors |  |  |  |
|  | 2. Administrative Expenses |  |  |  |
|  | 3. Investor Indentification |  |  |  |
|  | Notice/Publishing Approved Plan |  |  |  |
|  | Claimant Identification |  |  |  |
|  | Claims Processing |  |  |  |
|  | Web Site Maintenance/Call Center |  |  |  |
|  | 4. Fund Administrator Bond |  |  |  |
|  | 5. Miscellaneous |  |  |  |
|  | 6. FAIR Reporting Expenses |  |  |  |
|  | Total Plan Implementation Expenses Not Paid by the Fund |  |  |  |
| Line 15c | Tax Adminstrator Fees & Bonds Not Paid by the Fund |  |  |  |
|  | **Total Disbursements for Plan Adminstration Expenses Not Paid by the Fund** |  |  |  |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund** |  |  |  |
| Line 16a | Investment Expenses/CRIS Fees |  |  |  |
| Line 16b | Federal Tax Payments |  |  |  |
|  | **Total Disbursements to Court/Other Not Paid by the Fund** |  |  |  |
| Line 17 | **DC & State Tax Payments** |  |  |  |
| Line 18 | **No. of Claims** |  |  |  |
| Line 18a | *# of Claims Received This Reporting Period* |  |  |  |
| Line 18b | *#of Claims Received Since Inception of Fund* |  |  |  |
| Line 19 | **No. of Claimants/Investors** |  |  |  |
| Line 19a | *# of Claimants/Investors Paid This Reporting Period* |  |  |  |
| Line 19b | *# of Claimants/Investors Paid Since Inception of Fund* |  |  |  |

Receiver

By: _____

A. Cotten Wright
(printed name)

Receiver
(title)

Date: _____

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT**
for Horizon Private Equity III, LLC Receivership - Cash Basis
Receivership; 1:21-cv-3413-SDG
Reporting Period 10/01/2023  to 12/31/2023

Tri State Capital Bank
Checking xxxxxx7607

**DETAIL OF LINE 5, Business Asset Liquidation**

| Description | Amount | Total |
|---|---|---|
| Grier Wright Martinez Trust Account - Net Winner Settlement Payments | 85,610.98 | |
| Net Winner Settlement Payment | 15,000.00 | |
| | | 100,610.98 |

**DETAIL OF LINE 10a, Disbursements to Receiver or Other Professionals**

| Description | Amount | Total |
|---|---|---|
| Middleswarth, Bowers & Co, LLP - Accountant Fees | 8,792.00 | |
| Middleswarth, Bowers & Co, LLP - Accountant Expenses | 452.90 | |
| Ragsdale Beals Seigler Patterson & Gray, LLP - Receivers attorney fees | 3,042.00 | |
| Ragsdale Beals Seigler Patterson & Gray, LLP - Receivers attorney expenses | 14.20 | |
| Grier Wright Martinez, PA - Attorneys Fees, Receivers Firm | 51,585.00 | |
| Grier Wright Martinez, PA - Attorneys Expenses, Receivers Firm | 1,603.82 | |
| | | 65,489.92 |

**DETAIL OF LINE 10b, Business Asset Expenses**

| Description | Amount | Total |
|---|---|---|
| Streto - Consulting Fees | 21,663.10 | |
| | | 21,663.10 |

**Bank Balances**

| Description | Total |
|---|---|
| Combined TriState Bank and TriState ICS | 1,266,535.87 |

EXHIBIT I

**STANDARDIZED FUND ACCOUNTING REPORT**
for Horizon Private Equity III, LLC Receivership - Cash Basis
Receivership; 1:21-cv-3413-SDG
Reporting Period 10/01/2023  to 12/31/2023

**Tri State Capital Bank**
**Sale Funds Account xxxxxx7631**

**DETAIL OF LINE 5, Business Asset Liquidation**

| Description | Amount | Total |
|---|---|---|
| State of Montana - 2022 Tax Refund Southport Capital | 650.00 | |
| James Parker - Final Settlement Payment | 500,000.00 | |
| | | 500,650.00 |

**DETAIL OF LINE 10b, Business Asset Expenses**

| Description | Amount | Total |
|---|---|---|
| Invicta Partners - Storage Fees Southport Captial | 1,277.81 | |
| Tennessee Department of Revenue - Franchise Tax | 129.00 | |
| Montana Department of Revenue - 2022 Corp Income Tax | 50.00 | |
| Kentucky State Treasurer - 2022 Corp Income Tax | 175.00 | |
| Franchise Tax Board - 2022 Franchise Tax California | 825.00 | |
| North Carolina Department of Revenue - Livingston Asset Group | 206.00 | |
| Kentucky State Treasurer - 2021 Income Tax Livingston Asset Group | 175.00 | |
| Florida Department of Revenue - Late Filing Penalty | 300.00 | |
| North Carolina Department of Revenue - Interest and Penalty | 82.36 | |
| North Carolina Business Registration - Livingston Group Withdrawal Fee | 25.00 | |
| Tennessee Department of Revenue - Livingston Group Withdrawal Fee | 100.00 | |
| Invicta Partners - Storage Fees Southport Captial | 1,277.81 | |
| Smith, Gambrell & Russell LLP - Southport Capital Attorney | 14,309.06 | |
| Invicta Partners - Storage Fees Southport Captial | 1,277.81 | |
| | | 20,209.85 |

**Bank Balances**

| Description | | Total |
|---|---|---|
| Combined TriState Bank and TriState ICS | | 1,026,247.74 |

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT**
**for Horizon Privite Equity III, LLC Receivership - Cash Basis**
**Receivership; 1:21-cv-3413-SDG**
**Reporting Period 10/01/2023  to 12/31/2023**

Tri State Capital Bank
Distribution Account xxxxxx0095

**DETAIL OF LINE 9, Distributions**

| Description | Amount | Total |
|---|---|---|
| Investor Distribution | 838.21 | |
| Investor Distribution | 1,765.16 | |
| Investor Distribution | 15,631.20 | |
| Investor Distribution | 6,923.55 | |
| Investor Distribution | 1,769.00 | |
| Investor Distribution | 17,914.70 | |
| Investor Distribution | 2,135.66 | |
| Investor Distribution | 1,555.76 | |
| Investor Distribution | 2,002.87 | |
| Investor Distribution | 7,242.98 | |
| Investor Distribution | 2,264.23 | |
| Investor Distribution | 1,429.32 | |
| Investor Distribution | 3,177.26 | |
| Investor Distribution | 952.76 | |
| Investor Distribution | 3,912.66 | |
| Investor Distribution | 918.16 | |
| Investor Distribution | 5,252.26 | |
| Investor Distribution | 834.75 | |
| Investor Distribution | 3,729.32 | |
| Investor Distribution | 6,077.12 | |
| Investor Distribution | 907.86 | |
| Investor Distribution | 2,328.27 | |
| Investor Distribution | 3,567.61 | |
| Investor Distribution | 2,678.04 | |
| Investor Distribution | 7,647.09 | |
| Investor Distribution | 8,698.46 | |
| Investor Distribution | 28,595.56 | |
| Investor Distribution | 4,683.19 | |
| Investor Distribution | 11,130.22 | |
| Investor Distribution | 2,473.07 | |
| Investor Distribution | 1,012.58 | |
| Investor Distribution | 2,783.84 | |
| Investor Distribution | 4,894.91 | |
| Investor Distribution | 1,943.86 | |
| Investor Distribution | 1,515.99 | |
| Investor Distribution | 6,673.39 | |
| Investor Distribution | 4,483.72 | |
| Investor Distribution | 3,818.57 | |
| Investor Distribution | 3,107.52 | |
| Investor Distribution | 2,443.94 | |
| Investor Distribution | 1,179.83 | |
| Investor Distribution | 1,324.76 | |
| Investor Distribution | 2,585.80 | |
| Investor Distribution | 137.18 | |
| Investor Distribution | 1,266.48 | |
| Investor Distribution | 1,599.32 | |
| Investor Distribution | 2,763.78 | |
| Investor Distribution | 3,571.65 | |
| Investor Distribution | 793.37 | |
| Investor Distribution | 6,693.62 | |
| Investor Distribution | 2,194.46 | |
| Investor Distribution | 7,440.37 | |
| Investor Distribution | 699.59 | |
| Investor Distribution | 1,377.12 | |
| Investor Distribution | 648.69 | |
| Investor Distribution | 2,674.13 | |
| Investor Distribution | 638.98 | |
| Investor Distribution | 1,952.83 | |
| Investor Distribution | 1,661.39 | |
| Investor Distribution | 2,382.85 | |
| Investor Distribution | 16,505.96 | |
| Investor Distribution | 2,293.48 | |
| Investor Distribution | 1,329.11 | |
| Investor Distribution | 5,549.99 | |
| Investor Distribution | 2,808.37 | |
| Investor Distribution | 1,993.92 | |
| Investor Distribution | 2,742.39 | |
| Investor Distribution | 3,390.56 | |
| Investor Distribution | 1,648.11 | |

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT**
**for Horizon Privite Equity III, LLC Receivership - Cash Basis**
**Receivership; 1:21-cv-3413-SDG**
**Reporting Period 10/01/2023  to 12/31/2023**

**Tri State Capital Bank**
**Distribution Account xxxxxx0095**

| | |
|---|---:|
| Investor Distribution | 165.93 |
| Investor Distribution | 2,824.10 |
| Investor Distribution | 4,961.41 |
| Investor Distribution | 13,026.23 |
| Investor Distribution | 2,211.12 |
| Investor Distribution | 3,334.55 |
| Investor Distribution | 1,472.83 |
| Investor Distribution | 15,354.88 |
| Investor Distribution | 200.43 |
| Investor Distribution | 2,161.97 |
| Investor Distribution | 2,740.38 |
| Investor Distribution | 5,271.27 |
| Investor Distribution | 3,260.22 |
| Investor Distribution | 11,675.05 |
| Investor Distribution | 18,524.43 |
| Investor Distribution | 1,349.19 |
| Investor Distribution | 35,539.85 |
| Investor Distribution | 2,788.19 |
| Investor Distribution | 1,959.39 |
| Investor Distribution | 5,711.90 |
| Investor Distribution | 912.74 |
| Investor Distribution | 5,324.65 |
| Investor Distribution | 2,868.56 |
| Investor Distribution | 2,959.64 |
| Investor Distribution | 6,467.17 |
| Investor Distribution | 1,329.90 |
| Investor Distribution | 11,130.06 |
| Investor Distribution | 1,182.90 |
| Investor Distribution | 1,412.67 |
| Investor Distribution | 771.05 |
| Investor Distribution | 18,625.38 |
| Investor Distribution | 1,058.45 |
| Investor Distribution | 2,950.39 |
| Investor Distribution | 3,799.74 |
| Investor Distribution | 2,833.17 |
| Investor Distribution | 3,633.55 |
| Investor Distribution | 1,914.20 |
| Investor Distribution | 8,363.94 |
| Investor Distribution | 4,674.61 |
| Investor Distribution | 4,693.46 |
| Investor Distribution | 2,568.42 |
| Investor Distribution | 313.77 |
| Investor Distribution | 1,321.85 |
| Investor Distribution | 17,790.01 |
| Investor Distribution | 3,227.52 |
| Investor Distribution | 367.19 |
| Investor Distribution | 2,279.69 |
| Investor Distribution | 3,695.23 |
| Investor Distribution | 18,948.20 |
| Investor Distribution | 747.98 |
| Investor Distribution | 4,387.13 |
| Investor Distribution | 1,582.56 |
| Investor Distribution | 1,922.35 |
| Investor Distribution | 1,783.34 |
| Investor Distribution | 3,190.21 |
| Investor Distribution | 1,958.98 |
| Investor Distribution | 4,151.71 |
| Investor Distribution | 1,850.05 |
| Investor Distribution | 2,827.44 |
| Investor Distribution | 1,411.92 |
| Investor Distribution | 3,990.23 |
| Investor Distribution | 4,382.20 |
| Investor Distribution | 2,586.96 |
| Investor Distribution | 4,644.62 |
| Investor Distribution | 349.32 |
| Investor Distribution | 2,690.19 |
| Investor Distribution | 16,880.62 |
| Investor Distribution | 5,675.08 |
| Investor Distribution | 1,055.03 |
| Investor Distribution | 7,038.11 |
| Investor Distribution | 1,060.50 |
| Investor Distribution | 1,361.47 |
| Investor Distribution | 2,754.07 |

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT**
**for Horizon Privite Equity III, LLC Receivership - Cash Basis**
**Receivership; 1:21-cv-3413-SDG**
**Reporting Period 10/01/2023  to 12/31/2023**

**Tri State Capital Bank**
**Distribution Account xxxxxx0095**

| | |
|---|---:|
| Investor Distribution | 3,112.14 |
| Investor Distribution | 2,305.82 |
| Investor Distribution | 705.51 |
| Investor Distribution | 29,107.56 |
| Investor Distribution | 25,249.33 |
| Investor Distribution | 1,612.59 |
| Investor Distribution | 4,175.99 |
| Investor Distribution | 975.05 |
| Investor Distribution | 1,580.81 |
| Investor Distribution | 1,838.25 |
| Investor Distribution | 4,044.05 |
| Investor Distribution | 16,757.81 |
| Investor Distribution | 2,318.11 |
| Investor Distribution | 2,407.68 |
| Investor Distribution | 1,737.86 |
| Investor Distribution | 4,267.82 |
| Investor Distribution | 11,285.50 |
| Investor Distribution | 12,749.62 |
| Investor Distribution | 2,901.74 |
| Investor Distribution | 1,628.74 |
| Investor Distribution | 1,417.89 |
| Investor Distribution | 7,751.73 |
| Investor Distribution | 978.37 |
| Investor Distribution | 3,400.80 |
| Investor Distribution | 11,839.17 |
| Investor Distribution | 3,234.00 |
| Investor Distribution | 2,204.97 |
| Investor Distribution | 1,933.36 |
| Investor Distribution | 2,309.84 |
| Investor Distribution | 1,553.77 |
| Investor Distribution | 4,008.86 |
| Investor Distribution | 1,897.12 |
| Investor Distribution | 7,243.53 |
| Investor Distribution | 11,618.94 |
| Investor Distribution | 725.45 |
| Investor Distribution | 1,280.17 |
| Investor Distribution | 5,463.58 |
| Investor Distribution | 14,698.01 |
| Investor Distribution | 7,287.39 |
| Investor Distribution | 3,873.73 |
| Investor Distribution | 2,887.69 |
| Investor Distribution | 8,104.73 |
| Investor Distribution | 1,817.93 |
| Investor Distribution | 7,202.78 |
| Investor Distribution | 2,460.77 |
| Investor Distribution | 1,789.08 |
| Investor Distribution | 1,846.44 |
| Investor Distribution | 8,011.92 |
| Investor Distribution | 4,796.68 |
| Investor Distribution | 8,203.96 |
| Investor Distribution | 2,360.53 |
| Investor Distribution | 13,511.55 |
| Investor Distribution | 3,688.76 |
| Investor Distribution | 3,843.86 |
| Investor Distribution | 2,404.27 |
| Investor Distribution | 1,488.93 |
| Investor Distribution | 2,616.90 |
| Investor Distribution | 2,761.65 |
| Investor Distribution | 8,398.51 |
| Investor Distribution | 7,096.17 |
| Investor Distribution | 6,472.09 |
| Investor Distribution | 2,086.58 |
| Investor Distribution | 583.97 |
| Investor Distribution | 234.89 |
| Investor Distribution | 2,989.73 |
| Investor Distribution | 23,659.64 |
| Investor Distribution | 5,890.72 |
| Investor Distribution | 15,221.12 |
| Investor Distribution | 16,875.86 |
| Investor Distribution | 7,809.25 |
| Investor Distribution | 2,988.79 |
| Investor Distribution | 4,227.42 |
| Investor Distribution | 5,168.71 |
| Investor Distribution | 4,457.72 |

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT**
for Horizon Privite Equity III, LLC Receivership - Cash Basis
Receivership; 1:21-cv-3413-SDG
Reporting Period 10/01/2023  to 12/31/2023

**Tri State Capital Bank**
**Distribution Account xxxxxx0095**

| | |
|---|---:|
| **Investor Distribution** | 3,950.06 |
| **Investor Distribution** | 6,717.34 |
| **Investor Distribution** | 2,960.34 |
| **Investor Distribution** | 7,883.75 |
| **Investor Distribution** | 5,925.83 |
| **Investor Distribution** | 1,379.43 |
| **Investor Distribution** | 4,624.83 |
| **Investor Distribution** | 3,968.68 |
| **Investor Distribution** | 886.97 |
| **Investor Distribution** | 4,817.75 |
| **Investor Distribution** | 10,347.35 |
| **Investor Distribution** | 21,432.03 |
| **Investor Distribution** | 2,722.56 |
| **Investor Distribution** | 2,858.23 |
| **Investor Distribution** | 1,352.76 |
| **Investor Distribution** | 3,316.25 |
| **Investor Distribution** | 4,695.95 |
| **Investor Distribution** | 1,762.56 |
| **Investor Distribution** | 10,365.91 |
| **Investor Distribution** | 3,020.51 |
| **Investor Distribution** | 21,678.58 |
| **Investor Distribution** | 5,034.59 |
| **Investor Distribution** | 5,134.48 |
| **Investor Distribution** | 1,406.99 |
| **Investor Distribution** | 979.36 |
| **Investor Distribution** | 2,128.66 |
| **Investor Distribution** | 2,530.76 |
| **Investor Distribution** | 5,256.81 |
| **Investor Distribution** | 1,031.34 |
| **Investor Distribution** | 4,966.79 |
| **Investor Distribution** | 2,720.88 |
| **Investor Distribution** | 7,633.87 |
| **Investor Distribution** | 4,365.26 |
| **Investor Distribution** | 23,068.36 |
| **Investor Distribution** | 1,017.72 |
| **Investor Distribution** | 470.99 |
| **Investor Distribution** | 2,574.68 |
| **Investor Distribution** | 14,251.30 |
| **Investor Distribution** | 7,884.10 |
| **Investor Distribution** | 4,878.13 |
| **Investor Distribution** | 3,305.20 |
| **Investor Distribution** | 5,797.55 |
| **Investor Distribution** | 1,559.64 |
| **Investor Distribution** | 1,195.78 |
| **Investor Distribution** | 4,823.07 |
| **Investor Distribution** | 2,557.61 |
| **Investor Distribution** | 1,854.06 |
| **Investor Distribution** | 16,130.15 |
| **Investor Distribution** | 3,180.13 |
| **Investor Distribution** | 2,079.07 |
| **Investor Distribution** | 925.34 |
| **Investor Distribution** | 11,031.35 |
| **Investor Distribution** | 11,794.05 |
| **Investor Distribution** | 2,477.39 |
| **Investor Distribution** | 1,640.35 |
| **Investor Distribution** | 2,392.89 |
| **Investor Distribution** | 27,883.22 |
| **Investor Distribution** | 8,832.13 |
| **Investor Distribution** | 918.53 |
| **Investor Distribution** | 19,816.43 |
| **Investor Distribution** | 3,034.73 |
| **Investor Distribution** | 9,289.23 |
| **Investor Distribution** | 3,139.26 |
| **Investor Distribution** | 1,926.23 |
| **Investor Distribution** | 4,485.48 |
| **Investor Distribution** | 6,685.21 |
| **Investor Distribution** | 850.87 |
| **Investor Distribution** | 10,652.30 |
| **Investor Distribution** | 1,306.13 |
| **Investor Distribution** | 385.41 |
| **Investor Distribution** | 6,948.45 |
| **Investor Distribution** | 3,126.30 |
| **Investor Distribution** | 6,135.77 |
| **Investor Distribution** | 8,172.67 |

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT**
**for Horizon Privite Equity III, LLC Receivership - Cash Basis**
**Receivership; 1:21-cv-3413-SDG**
**Reporting Period 10/01/2023  to 12/31/2023**

**Tri State Capital Bank**
**Distribution Account xxxxxx0095**

| | |
|---|---:|
| Investor Distribution | 3,390.50 |
| Investor Distribution | 3,046.04 |
| Investor Distribution | 9,118.77 |
| Investor Distribution | 3,157.19 |
| Investor Distribution | 3,074.06 |
| Investor Distribution | 8,919.66 |
| Investor Distribution | 1,347.85 |
| Investor Distribution | 1,403.64 |
| Investor Distribution | 628.39 |
| Investor Distribution | 6,684.50 |
| Investor Distribution | 1,687.37 |
| Investor Distribution | 1,883.13 |
| Investor Distribution | 3,251.91 |
| Investor Distribution | 1,742.99 |
| Investor Distribution | 4,529.59 |
| Investor Distribution | 3,016.26 |
| Investor Distribution | 15,228.77 |
| Investor Distribution | 983.77 |
| Investor Distribution | 1,321.96 |
| Investor Distribution | 8,687.25 |
| Investor Distribution | 19,999.02 |
| Investor Distribution | 6,080.29 |
| Investor Distribution | 3,436.69 |
| Investor Distribution | 5,190.03 |
| Investor Distribution | 3,503.63 |
| Investor Distribution | 3,020.59 |
| Investor Distribution | 6,448.40 |
| Investor Distribution | 1,847.77 |
| Investor Distribution | 3,580.46 |
| Investor Distribution | 3,331.34 |
| Investor Distribution | 6,453.14 |
| Investor Distribution | 3,157.41 |
| Investor Distribution | 16,421.60 |
| Investor Distribution | 1,639.33 |
| Investor Distribution | 2,191.29 |
| Investor Distribution | 1,080.58 |
| Investor Distribution | 3,551.16 |
| Investor Distribution | 1,377.64 |
| Investor Distribution | 1,620.49 |
| Investor Distribution | 3,412.52 |
| Investor Distribution | 782.03 |
| Investor Distribution | 2,826.34 |
| Investor Distribution | 820.27 |
| Investor Distribution | 1,638.53 |
| Investor Distribution | 759.03 |
| Investor Distribution | 1,673.00 |
| Investor Distribution | 3,268.05 |
| Investor Distribution | 614.60 |
| Investor Distribution | 3,405.24 |
| Investor Distribution | 1,714.70 |
| Investor Distribution | 3,587.75 |
| Investor Distribution | 10,308.25 |
| Investor Distribution | 10,350.01 |
| Investor Distribution | 2,686.93 |
| Investor Distribution | 3,954.11 |
| Investor Distribution | 6,098.08 |
| Investor Distribution | 6,147.63 |
| Investor Distribution | 1,403.12 |
| Investor Distribution | 3,095.70 |
| Investor Distribution | 12,989.44 |
| Investor Distribution | 41,157.22 |
| Investor Distribution | 5,506.86 |
| Investor Distribution | 3,384.19 |
| Investor Distribution | 4,331.83 |
| Investor Distribution | 6,989.78 |
| Investor Distribution | 16,292.36 |
| Investor Distribution | 3,292.25 |
| Investor Distribution | 8,566.14 |
| Investor Distribution | 168,131.41 |
| Investor Distribution | 5,607.14 |
| Investor Distribution | 5,638.20 |
| Investor Distribution | 3,480.39 |
| Investor Distribution | 6,098.08 |
| Investor Distribution | 7,562.94 |

EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT**
**for Horizon Private Equity III, LLC Receivership - Cash Basis**
**Receivership: 1:21-cv-3413-SDG**
**Reporting Period 10/01/2023  to 12/31/2023**

**Tri State Capital Bank**
**Distribution Account xxxxxx0095**

| | |
|---|---:|
| Investor Distribution | 8,901.43 |
| Investor Distribution | 3,741.96 |
| Investor Distribution | 2,535.88 |
| Investor Distribution | 887.19 |
| Investor Distribution | 19,780.87 |
| Investor Distribution | 1,646.40 |
| Investor Distribution | 7,667.12 |
| Investor Distribution | 5,029.05 |
| Investor Distribution | 6,012.05 |
| Investor Distribution | 15,804.10 |
| Investor Distribution | 7,921.10 |
| Investor Distribution | 5,049.37 |
| Investor Distribution | 1,707.12 |
| Investor Distribution | 2,951.40 |
| Investor Distribution | 3,641.15 |
| Investor Distribution | 3,095.70 |
| Investor Distribution | 8,152.80 |
| Investor Distribution | 8,981.45 |
| Investor Distribution | 5,309.16 |
| Investor Distribution | 5,949.51 |
| Investor Distribution | 14,070.74 |
| Investor Distribution | 13,803.44 |
| Investor Distribution | 1,773.45 |
| Investor Distribution | 7,009.12 |
| Investor Distribution | 1,435.45 |
| Investor Distribution | 4,470.62 |
| Investor Distribution | 63,483.10 |
| Investor Distribution | 1,748.39 |
| Investor Distribution | 4,744.83 |
| Investor Distribution | 22,290.74 |
| Investor Distribution | 10,181.00 |
| Investor Distribution | 12,146.35 |
| Investor Distribution | 10,899.33 |
| Investor Distribution | 2,083.56 |
| Investor Distribution | 893.40 |
| Investor Distribution | 3,548.08 |
| Investor Distribution | 893.39 |
| Investor Distribution | 9,068.66 |
| Investor Distribution | 2,030.64 |
| Investor Distribution | 6,608.27 |
| Investor Distribution | 1,743.56 |
| Investor Distribution | 385.12 |
| Investor Distribution | 2,161.18 |
| Investor Distribution | 1,200.93 |
| Investor Distribution | 5,029.05 |
| Investor Distribution | 7,115.22 |
| Investor Distribution | 1,800.98 |
| Investor Distribution | 34,571.98 |
| Investor Distribution | 11,120.18 |
| Investor Distribution | 6,551.44 |
| Investor Distribution | 46,777.02 |
| Investor Distribution | 8,846.02 |
| Investor Distribution | 11,100.94 |
| Investor Distribution | 7,642.53 |
| Investor Distribution | 4,888.37 |
| Investor Distribution | 11,471.99 |
| Investor Distribution | 3,251.67 |
| Investor Distribution | 3,251.67 |
| Investor Distribution | 717.54 |
| Investor Distribution | 2,194.48 |
| | 2,499,951.01 |

**Bank Balances**

**Description**

| | |
|---|---:|
| Combined TriState Bank and TriState ICS | 39,078.91 |

**EXHIBIT B**

**ASSET REPORT**

# Form 1
## Individual Estate Property Record and Report
## Asset Cases

Page:  1

**Case No.:**   21-03413

**Case Name:**   RECEIVER'S ACCOUNT, ESTATE OF HORIZON PRIVATE EQUITY, III, LLC

**For Period Ending:**   12/31/2023

**Trustee Name:**   (530670) A. Cotten Wright

**Date Filed (f) or Converted (c):**   09/01/2021 (f)

**§ 341(a) Meeting Date:**

**Claims Bar Date:**

| Ref. # | Asset Description (Scheduled And Unscheduled (u) Property) | 1 Petition/ Unscheduled Values | 2 Estimated Net Value (Value Determined By Trustee, Less Liens, Exemptions, and Other Costs) | 3 | 4 Property Formally Abandoned OA=§554(a) abandon. | 5 Sale/Funds Received by the Estate | 6 Asset Fully Administered (FA)/ Gross Value of Remaining Assets | 7 Lien Amount | 8 Exempt Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1* | Cash in TD Ameritrade Account (See Footnote) | 14,699,092.52 | 0.00 | | | 14,699,092.52 | FA | 0.00 | 0.00 |
| 2* | Athletafied - 25% interest in RecruitU d/b/a Athletafied (See Footnote) | 453,000.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| 3* | Battlefield Parkway Partners LLC - 50% interest (See Footnote) | 924,782.84 | 0.00 | | | 0.00 | FA | 5,150,882.93 | 0.00 |
| 4* | BI Developments II LLC - 50% interest (See Footnote) | 1,206,580.00 | 0.00 | | | 57,800.00 | FA | 3,077,408.09 | 0.00 |
| 5* | BI Developments III LLC -  70% interest (See Footnote) | 126,000.00 | 0.00 | | | 8,700.00 | FA | 385,281.00 | 0.00 |
| 6* | BI Developments LLC - 40% interest (See Footnote) | 473,008.33 | 0.00 | | | 33,500.00 | FA | 1,728,406.71 | 0.00 |
| 7* | BW Hunting Club, LLC - 50% interest (See Footnote) | 1,500,000.00 | 121,950.36 | | | 151,935.00 | FA | 0.00 | 0.00 |
| 8* | Chattanooga Professional Baseball, LLC - 20.12% interest (See Footnote) | 2,000,000.00 | 1,875,684.00 | | | 1,875,684.00 | FA | 0.00 | 0.00 |
| 9* | Croft & Bender Fund Investment (See Footnote) | 112,731.00 | 112,731.00 | | | 240,496.51 | FA | 0.00 | 0.00 |
| 10* | East Brainerd Partners LLC - 50% interest (See Footnote) | 1,292,288.00 | 0.00 | | | 740,000.00 | FA | 3,700,000.00 | 0.00 |
| 11* | EBES Partners LLC - 50% interest (See Footnote) | 2,794,167.45 | 78,288.57 | | | 800,000.00 | FA | 2,715,878.88 | 0.00 |
| 12 | VOID | VOID | VOID | VOID | | VOID | VOID | VOID | VOID |
| 13* | Highway 153 Partners LLC - 50% interest (See Footnote) | 1,961,496.78 | 0.00 | | | 50,000.00 | FA | 4,085,444.00 | 0.00 |
| 14* | Cash in IberiaBank Account (See Footnote) | 350,000.00 | 0.00 | | | 322,990.15 | FA | 0.00 | 0.00 |
| 15* | Lakewood Ranch Risk Management LLC - 60% (See Footnote) | 1,500,000.00 | 0.00 | | OA | 0.00 | FA | 0.00 | 0.00 |
| 16* | Dynamo Fund I, L.P. (See Footnote) | 408,412.00 | 408,412.00 | | | 1,330,167.00 | FA | 0.00 | 0.00 |
| 17* | Birchwood II, LLC - 30% interest (See Footnote) | 330,874.35 | 0.00 | | | 100,000.00 | FA | 1,657,845.00 | 0.00 |
| 18* | Livingston Group Asset Management Co. d/b/a Southport Capital - 66% interest (See Footnote) | 5,669,641.00 | 5,669,641.00 | | | 4,309,470.93 | FA | 0.00 | 0.00 |
| 19* | MVP Studios, LLC - 50% interest (See Footnote) | 163,000.00 | 0.00 | | | 5,000.00 | FA | 0.00 | 0.00 |
| 20* | 112 Mill Street, Greenville, KY 42335 (See Footnote) | 150,000.00 | 0.00 | | | 110,000.00 | FA | 0.00 | 0.00 |
| 21* | 3621 Vinings Slope SE, Suite 4450, Atlanta, GA 30339 (See Footnote) | 550,000.00 | 0.00 | | | 995,122.83 | FA | 847,354.23 | 0.00 |
| 22* | Prepstar LLC  (See Footnote) | 115,500.00 | 115,500.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| 23* | ProNvest, Inc. (See Footnote) | 300,000.00 | 100,000.00 | | | 25,000.00 | FA | 0.00 | 0.00 |
| 24* | The Shoppes of Valleybrook LLC - 50% interest (See Footnote) | 1,164,287.99 | 75,042.14 | | | 650,000.00 | FA | 1,089,245.85 | 0.00 |
| 25* | Dynamo-Skupos, LLC investment (See Footnote) | 50,583.00 | 57,866.00 | | | 57,866.00 | FA | 0.00 | 0.00 |

# Form 1
## Individual Estate Property Record and Report
## Asset Cases

Page:  2

**Case No.:**   21-03413

**Case Name:**   RECEIVER'S ACCOUNT, ESTATE OF HORIZON PRIVATE EQUITY, III, LLC

**For Period Ending:**   12/31/2023

**Trustee Name:**   (530670) A. Cotten Wright

**Date Filed (f) or Converted (c):**   09/01/2021 (f)

**§ 341(a) Meeting Date:**

**Claims Bar Date:**

| Ref. # | 1<br>Asset Description<br>(Scheduled And Unscheduled (u) Property) | 2<br>Petition/<br>Unscheduled<br>Values | 3<br>Estimated Net Value<br>(Value Determined By<br>Trustee,<br>Less Liens,<br>Exemptions,<br>and Other Costs) | 4<br>Property<br>Formally<br>Abandoned<br>OA=§554(a)<br>abandon. | 5<br>Sale/Funds<br>Received by the<br>Estate | 6<br>Asset Fully<br>Administered (FA)/<br>Gross Value of<br>Remaining Assets | 7<br>Lien Amount | 8<br>Exempt<br>Amount |
|---|---|---|---|---|---|---|---|---|
| 26* | Dynamo-Stord SPV III (See Footnote) | 75,000.00 | 50,583.00 | | 58,831.00 | FA | 0.00 | 0.00 |
| 27* | WW Partners LLC - 50% interest (See Footnote) | 522,308.00 | 0.00 | | 460,000.00 | FA | 1,350,000.00 | 0.00 |
| 28* | Relevance Capital III, LP investment (See Footnote) | 427,500.00 | 427,500.00 | | 0.00 | 427,500.00 | 0.00 | 0.00 |
| 29* | Loan Receivable from USA Sands LLC (See Footnote) | 0.00 | 50,000.00 | | 10,000.00 | FA | 0.00 | 0.00 |
| 30* | U.S. Sampleworks, LLC (See Footnote) | 0.00 | 50,000.00 | | 12,000.00 | FA | 0.00 | 0.00 |
| 31* | Loan Receivable from James Woods (See Footnote) | 0.00 | 15,000.00 | | 17,005.35 | FA | 0.00 | 0.00 |
| 32* | WW Outdoor Media, LLC (See Footnote) | | | | | | | |
| 33* | Loan Receivable from Horizon Private Equity, LLC (See Footnote) | 25,000.00 | 0.00 | | 10,000.00 | FA | 0.00 | 0.00 |
| 34* | Rent - 112 Mill Street, Greenville, KY 42335 (u) (See Footnote) | 0.00 | 0.00 | | 7,500.00 | FA | 0.00 | 0.00 |
| 35* | Rent - 3621 Vinings Slope SE, Suite 4450, Atlanta, GA 30339 (u) (See Footnote) | 0.00 | 0.00 | | 36,000.00 | FA | 0.00 | 0.00 |
| 36* | Car Wash Station, LLC - 33.33-% interest (See Footnote) | 321,000.00 | 112,535.00 | | 112,535.00 | FA | 0.00 | 0.00 |
| 37* | Southport Capital Checking Account Funds (u) (See Footnote) | 0.00 | 0.00 | | 76,841.03 | FA | 0.00 | 0.00 |
| 38* | Settlement Agreement between Clay Parker & Southport Capital (u) (See Footnote) | 0.00 | 0.00 | | 1,125,000.00 | FA | 0.00 | 0.00 |
| 39* | Cash from Provident Trust (u) (See Footnote) | 0.00 | 0.00 | | 999.98 | FA | 0.00 | 0.00 |
| 40* | Net Winner Settlement Payments (u) (See Footnote) | 0.00 | 0.00 | | 276,236.20 | 0.00 | 0.00 | 0.00 |
| 41* | FINRA TERMINATION REFUND (u) (See Footnote) | 0.00 | 0.00 | | 320.00 | FA | 0.00 | 0.00 |
| 42* | Montana Tax Refund for Southport Capital (u) (See Footnote) | 0.00 | 0.00 | | 650.00 | FA | 0.00 | 0.00 |
| **42** | **Assets Totals (Excluding unknown values)** | **$39,666,253.26** | **$9,320,733.07** | | **$28,766,743.50** | **$427,500.00** | **$25,787,746.69** | **$0.00** |

RE PROP# 1       Turnover of cash in TD Ameritrade account held in Horizon's name.

RE PROP# 2       The Receivership Estate owns a 47.5% interest in Hardwood Sports, LLC, which in turn owns a 25% investment interest in a sports data collection company, Recruit U d/b/a Athletafied, that tests the skills of high school athletes.  According to information received from Woods, the initial investment in this entity was $110,000, and Horizon made a loan to the entity for $343,000, resulting in a net investment in Recruit U to $453,000.  Woods separately indicated that the net investment in Hardwood Sports, LLC was $333,000.  The Receiver's research, including calls with the other members and an attorney for Hardwood, LLC and Athletafied/Recruit U, revealed that Hardwood, LLC was formed as a holding company for Athletafied/Recruit U.  Further, it owns Highlight U, which was formed to be social media platform and recruiting service for high school athletes.  It appears that although those entities were formed, they were not successful and are not currently operating entities.  At present, none of the entities have employees, clients, or any assets.  Therefore, the Receiver believes the value to the Receivership Estate in these entities is $0.00 and anticipates abandoning this asset.

# Form 1

## Individual Estate Property Record and Report
## Asset Cases

Page:  3

| | |
|---|---|
| **Case No.:**   21-03413 | **Trustee Name:**   (530670) A. Cotten Wright |
| **Case Name:**   RECEIVER'S ACCOUNT, ESTATE OF HORIZON PRIVATE EQUITY, III, LLC | **Date Filed (f) or Converted (c):**   09/01/2021 (f) |
| | **§ 341(a) Meeting Date:** |
| **For Period Ending:**   12/31/2023 | **Claims Bar Date:** |

| | |
|---|---|
| RE PROP# 3 | The Receivership Estate owned a 50% interest in this entity that owns a strip center located at 2705  Battlefield Pkwy, Fort Oglethorpe, GA.  Woods indicated that Horizon's net investment in this asset was $924,782.84. The property was financed by First Volunteer Bank, loan #-8564; lien amount is payoff quote as of 8/30/2021 and reflects lien on the entire project, not just Horizon's interest.  Horizon's equity interest was to be paid after bank and before other distributions. The original value of $1,412,033.92 for Horizon's interest that was provided by John Woods appears to have contemplated completion of the project.  On 12/27/2022, the Court entered its Order Authorizing Receiver (1) to Enter into a Redemption Agreement with Regard to Interests in The Shoppes of Valleybook, LLC; EBES Partners, LLC: East Brainerd Partners, LLC; WW Partners, LLC; Highway 153 Partners, LLC; and Battlefield Partners, LLC; and (2) to Assign Such Interests (DE 352).  Pursuant to that Order, the Receiver entered into a Redemption Agreement whereby the Receivership Estate's interest in Battlefield Parkway Partners, LLC was transferred to that entity for the redemption price of $0.00 given the outstanding amount due on the lien against property owned by the entity. |
| RE PROP# 4 | Pursuant to an Order entered on 9/9/2022, the value of the Receivership Estate's 50% interest in an entity formed to redevelop a former Sears store in Chattanooga, TN was liquidated along with the interests held in two other related entities. First Volunteer Bank released its claim pursuant to Horizon's guaranty of a $3 million loan in that transaction.  Woods had indicated that Horizon's net investment in this asset was $1,206,580.  The original value for Horizon's interest that was provided by John Woods was $2 million, apparently based on completion of the project. |
| RE PROP# 5 | Pursuant to an Order entered on 9/9/2022, the value of the Receivership Estate's 70% interest in an entity that was formed to develop a parking area adjacent to a former Logan's Restaurant in Chattanooga, TN, was liquidated along with the interests held in two related entities.  First Volunteer Bank released its claim pursuant to Horizon's guaranty of a loan in that transaction.  Woods had indicated that Horizon's net investment in this asset was $126,000.  An original value of $500,000 for Horizon's interest that was provided by John Woods apparently contemplated completion of the project. |
| RE PROP# 6 | Pursuant to an Order entered on 9/9/2022, the value of the Receivership Estate's 40% interest in an entity formed to redevelop a former JC Penny store in Chattanooga, TN was liquidated along with the interests held in two other related entities.  First Volunteer Bank released its claim pursuant to Horizon's guaranty of a loan in that transaction.  Woods had indicated that Horizon's net investment in this asset was $473,008.33.  The original value of $1.5 million for Horizon's interest that was provided by John Woods apparently contemplated completion of the project. |
| RE PROP# 7 | On 12/28/21, the Court entered an Order allowing for the sale of the Receivership's interest in this asset for a total price of $151,935, DE 119. The buyer had provided a down payment of $25,000, leaving $126,935 due within 15 days of the Order. That amount was wired to the Receivership account on 1/3/22.  The real property owned by this entity is adjacent to property owned by Birchwood II, LLC, a Hamilton County landfill.  This land was purchased in 2017 for $356,000, and the timber has been harvested.  The plan for the property was to request that it be rezoned and used to increase the size of the adjacent landfill.  Woods indicated that Horizon's net investment in this asset was $121,950.36.  The original value for Horizon's interest that was provided by John Woods apparently contemplated additional improvements. |
| RE PROP# 8 | An Order authorizing redemption of the Receivership Estate's 20.12% interest in this entity that owns the Chattanooga Lookouts baseball team for $1,875,684 was entered on 10/21/21, DE 81. Woods indicated that the net amount invested was $1,991,850.00. |
| RE PROP# 9 | The Receivership Estate held a 0.9218 % interest in a Nashville, TN private equity fund.  Distributions on this investment were received on 12/7/21, 6/7/22 and 7/29/22.  This interest was sold on 11/23/22, Order DE 337.  Woods indicated that Horizon's net investment in this asset was $112,731. Original value shown was provided by John Woods. |
| RE PROP# 10 | The Receivership Estate owned a 50% interest in an entity that owns property located in Chattanooga, TN that is leased to Starbucks; Cell Surgeon; Crumbl; Pacific Dental; Pure Nail Spa; one vacant unit.  The property is subject to lien held by Southeast Bank, loan #-2832; original balance was $3.7 million.  The lien amount shown reflects the lien on the entire project, not just Horizon's interest.  The Horizon interest was to be paid first after bank, before other distributions.  Woods indicated that Horizon's net investment in this asset was $1,292,288.  The original value for Horizon's interest  of $2,491,949.83 that was provided by John Woods apparently contemplated further development.  On 12/27/2022, the Court entered its Order Authorizing Receiver (1) to Enter into a Redemption Agreement with Regard to Interests in The Shoppes of Valleybook, LLC; EBES Partners, LLC: East Brainerd Partners, LLC; WW Partners, LLC; Highway 153 Partners, LLC; and Battlefield Partners, LLC; and (2) to Assign Such Interests (DE 352).  Pursuant to that Order, the Receiver entered into a Redemption Agreement whereby the Receivership Estate's interest in East Brainerd, LLC was transferred to that entity for the redemption price of $740,000.00 given the outstanding amount due on the lien against property owned by the entity. |
| RE PROP# 11 | The Receivership Estate owned a 50% interest in an entity formed to develop property that has been rezoned for an apartment complex.  Development work had not started.  The property was financed by First Volunteer Bank loan #-0283; the lien amount is the payoff as of 8/27/2021 and reflects the lien on the entire project, not just Horizon's interest.  Woods indicated that Horizon's net investment in this asset was $2,794,167.  The original value of $3m for Horizon's interest that was provided by John Woods apparently contemplated completion of the project.  On 12/27/2022, the Court entered its Order Authorizing Receiver (1) to Enter into a Redemption Agreement with Regard to Interests in The Shoppes of Valleybook, LLC; EBES Partners, LLC: East Brainerd Partners, LLC; WW Partners, LLC; Highway 153 Partners, LLC; and Battlefield Partners, LLC; and (2) to Assign Such Interests (DE 352).  Pursuant to that Order, the Receiver entered into a Redemption Agreement whereby the Receivership Estate's interest in EBES Partners, LLC was transferred to that entity for the redemption price of $800,000.00 given the outstanding amount due on the lien against property owned by the entity. |

# Form 1

# Individual Estate Property Record and Report
## Asset Cases

Page:  4

**Case No.:**   21-03413

**Case Name:**   RECEIVER'S ACCOUNT, ESTATE OF HORIZON PRIVATE EQUITY, III, LLC

**For Period Ending:**   12/31/2023

**Trustee Name:**   (530670) A. Cotten Wright

**Date Filed (f) or Converted (c):**   09/01/2021 (f)

**§ 341(a) Meeting Date:**

**Claims Bar Date:**

| | |
|---|---|
| RE PROP# 13 | The Receivership Estate owned a 50% interest in an entity formed to develop property at 5513 Highway 153, Hixson, TN. The property is subject to lien of Southeast bank, loan #-8763 in original amount of $1,365,000 plus a construction loan of approximately $2.5 million for a total of about $3.7 million; lien balance as of 12/5/2022 was $4,085,444.  The lien amounts shown reflect liens on the entire project, not just Horizon's interest.  Horizon was to receive its equity interest after bank and before other distributions are made.  Woods indicated that Horizon's net investment in this asset was $1,961,497.  The original value of $2,472,132.90 for Horizon's interest (only) that was provided by John Woods apparently contemplated completion of the project.  On 12/27/2022, the Court entered its Order Authorizing Receiver (1) to Enter into a Redemption Agreement with Regard to Interests in The Shoppes of Valleybook, LLC; EBES Partners, LLC: East Brainerd Partners, LLC; WW Partners, LLC; Highway 153 Partners, LLC; and Battlefield Partners, LLC; and (2) to Assign Such Interests (DE 352). Pursuant to that Order, the Receiver entered into a Redemption Agreement whereby the Receivership Estate's interest in Highway 153 Partners, LLC was transferred to that entity for the redemption price of $50,000.00 given the outstanding amount due on the lien against property owned by the entity. |
| RE PROP# 14 | Cash in account at IberiaBank; turned over to receivership on 9/10/21. |
| RE PROP# 15 | This asset reflected John Woods' 79% membership interest in a Florida-based insurance company; Woods indicated that the net amount invested in this asset was $0.00.  The Court entered an Order allowing this asset to be abandoned on 3/2/2022 given that it has no value for the Receivership Estate.  The original value shown was provided by John Woods. |
| RE PROP# 16 | The Receivership held a 2.7778% interest in this Nashville, TN based private equity fund.  A distribution of $55,167 was received on this investment on 3/11/22.  The estate's interest in this asset was liquidated pursuant to the Court's Order, DE 346, for combined payments totaling $1,275,000.  Woods indicated that Horizon's net investment in this asset was $408,412. An original value of $1,538,018 was provided by John Woods. |
| RE PROP# 17 | This asset was sold for a total sale price of $100,000 pursuant to an Order entered on February 28, 2022.   Net amount invested  of $330,874.35 was provided John Woods on 10-15-21 relative to a 30% interest in operating landfill on 25 acres at 9327 Birchwood Pike, Hamilton, TN.  The assets of this entity were subject to liens held by Pinnacle Bank, which came to $1,657,845.  The original value of $2 million for Horizon's interest that was provided by John Woods apparently reflected additional improvements. |
| RE PROP# 18 | On April 21, 2022, the the Court entered an Order on the Receiver's motion to settle with Southport Capital and IBERIABANK so as to permit the sale of Southport Capital's operating assets.  Payments are due in two installments; the first payment was made on 6/29/22.  The second payment was made on 7/20/23.  Southport Capital's books indicate that Woods held the 66% membership, and that interest was made property of the Receivership Estate pursuant to the Receivership Order entered on 9-1-21.  On 10-15-21, Woods' indicated that the net amount invested in this asset was  $5,669,641. Woods had previously indicated that the value of this asset was $34,000,000. |
| RE PROP# 19 | Woods reported  that the Receivership Estate owned a 50% interest in an entity formed to find film locations in Atlanta, GA with a net investment of $163,000.   The Receiver's research including calls with co-owner revealed that this entity was a debtor of Horizon relative to a promissory note for $163,000.  The entity has no on-going operations and no assets, and financial information provided shows substantial liabilities.  The Receiver reached a settlement as to this asset  which provided for payment of $5,000 in two installments, subject to Court approval.  Order approving settlement was entered on 7/20/23, Doc. No. 425. |
| RE PROP# 20 | The Receivership Estate owned real property in Greenville, KY that was leased to Southport Capital for $1500 per month. This asset was sold for $110,000 pursuant to an Order entered on January 18, 2022.  The net sale proceeds came to $108,959.89.  Woods indicated that Horizon's net investment in this asset was $150,000. |
| RE PROP# 21 | The Receivership Estate owned an office condominium in, Atlanta, GA that was sold on June 7, 2022; the net sale proceeds were $142,826.72, including a refund of $122,83 received post-sale from First Horizon Bank.  This property was subject to a lien held by First Horizon Bank, successor to IBERIABANK, which was paid in full through the sale in the amount of $847,354.23.  This property was subject to monthly condo association fees.  This property had been leased to Southport Capital for $6,000 per month.  Woods indicated that Horizon's net investment was $328,177.08.  Original value of $550,000 was provided by John Woods. |
| RE PROP# 22 | The Receivership Estate holds an interest in an entity that Woods described as a Los Angeles based football magazine.  The Receiver has learned that this entity is a sports recruiting company for high school athletes. Woods indicated that Horizon's net investment in this asset was $115,500.  The original value of $500,000 was provided by John Woods.  The Receiver had previously determined that this asset has no value for the Receivership Estate because it had no income from operations, but has received additional information that she is investigating. |
| RE PROP# 23 | The Receivership Estate owned an interest in an entity that Woods indicated specializes in retirement planning and investment management.  In fact, this entity provides software to track retirement savings.  Woods indicated that Horizon's net investment in this asset was $100,000.  This entity invested in SigniX, a Docusign competitor; companies have merged. Original value shown was provided by John Woods.  The current value reflects a negotiated offer that will be submitted for Court approval.  Order approving redemption and assignment of interest for $25,000 was entered on 5/8/23,  Doc. No. 400. |

# Form 1
# Individual Estate Property Record and Report
# Asset Cases

Page:  5

**Case No.:**   21-03413

**Case Name:**   RECEIVER'S ACCOUNT, ESTATE OF HORIZON
PRIVATE EQUITY, III, LLC

**For Period Ending:**   12/31/2023

**Trustee Name:**   (530670) A. Cotten Wright

**Date Filed (f) or Converted (c):**   09/01/2021 (f)

**§ 341(a) Meeting Date:**

**Claims Bar Date:**

| | |
|---|---|
| RE PROP# 24 | The Receivership Estate owned a 50% interest in an entity that owns four parcels in Hixson, TN:  5933 Hixson Pike (leased to a Jack's Hamburgers); 5925 Hixson Pike (leased to a car wash); 5919 Hixson Pike; and 5943 Hixson Pike.   One parcel (5925 Hixson Pike) was transferred to Car Wash Station, LLC in November, 2021 and entered as a separate asset.  Woods indicated that Horizon's net investment in this asset was $1,164,287.99. Financed by First Volunteer Bank, loan #-0186 & #-4334.  The lien amount is total of two loans payout amounts as of 8/27/21 and reflects lien on the entire project, not just Horizon's interest.  Horizon's equity was to be paid after bank and before other distributions.  The original of $1.5m for Horizon's interest that was provided by John Woods apparently contemplated further development.  On 12/27/2022, the Court entered its Order Authorizing Receiver (1) to Enter into a Redemption Agreement with Regard to Interests in The Shoppes of Valleybook, LLC; EBES Partners, LLC; East Brainerd Partners, LLC; WW Partners, LLC; Highway 153 Partners, LLC; and Battlefield Partners, LLC; and (2) to Assign Such Interests (DE 352).  Pursuant to that Order, the Receiver entered into a Redemption Agreement whereby the Receivership Estate's interest in The Shoppes of Valleybrook, LLC was transferred to that entity for the redemption price of $650,000.00 given the outstanding amount due on the lien against property owned by the entity. |
| RE PROP# 25 | The Receivership Estate held a 3.7944918% investment interest in a San Francisco based start-up company, which is a special purchase vehicle of Dynamo Fund, I, L.P.  This asset was sold for $57,866 with Court approval (DE 347). Woods had indicated that Horizon's net investment in this asset was $57,866.   An original value of $75,000 was provided by John Woods. |
| RE PROP# 26 | The Receivership Estate holds an interest in an Atlanta-based software driven warehousing and fulfillment company, which is a special purpose vehicle affiliated with Dynamo Fund I, L.P.  This asset was sold for $58,831 with Court approval (DE 347).  Woods had indicated that Horizon's net investment in this asset was $50,583.00. Original value shown was provided by John Woods. |
| RE PROP# 27 | The Receivership Estate owned a 50% interest in an entity that owns restaurant property at 5595 Highway 153, Hixson, TN that is currently leased to Applebee's per a 25-year ground lease.  The property is subject to a $1,350,000 lien held by Pinnacle Bank.  The lien amount reflects a lien on the entire project and not just Horizon's interest.  Woods indicated that Horizon's net investment in this asset was $522,308.  The original value of $627,770.98 for Horizon's interest that was provided by John Woods apparently contemplated further development.  On 12/27/2022, the Court entered its Order Authorizing Receiver (1) to Enter into a Redemption Agreement with Regard to Interests in The Shoppes of Valleybook, LLC; EBES Partners, LLC; East Brainerd Partners, LLC; WW Partners, LLC; Highway 153 Partners, LLC; and Battlefield Partners, LLC; and (2) to Assign Such Interests (DE 352).  Pursuant to that Order, the Receiver entered into a Redemption Agreement whereby the Receivership Estate's interest in WW Partners, LLC was transferred to that entity for the redemption price of $460,000.00 given the outstanding amount due on the lien against property owned by the entity. |
| RE PROP# 28 | The Receivership Estate owns  a 3.676%  interest in a Tennessee based private equity fund.  Woods indicated that Horizon's net investment in this asset was $427,500. The original value that was provided by John Woods was $921,016. |
| RE PROP# 29 | This asset was added based on information provided by counsel for John Woods on 10-15-21. The asset was described as a loan to a company involved in bomb-detection technology. The Promissory Note is dated 11/25/2019 in the amount of $50,000.00; information was that no payments had been made.  The current value reflects a negotiated settlement that the Receiver submitted for Court approval upon receipt of the settlement funds.  On June 12, 2023, the Court entered an Order approving the settlement, DE 413. |
| RE PROP# 30 | Order entered on 9/21/22, DE 295, allowing redemption of this interest for $12,000.  This asset and the net amount invested was added based on information provided by counsel for John Woods on 10-15-21.  This entity sells online subscriptions for children's books.  Horizon owned a 12.069% interest in this entity. |
| RE PROP# 31 | This asset reflects the balance of a loan made to James W Woods.  The loan was paid in full plus interest in connection with the distribution on James Woods' Class 4 Claim Against Southport, per Order DE 293.  This asset was added based on information from counsel for John Woods provided on 10-15-21. |
| RE PROP# 32 | Based on a letter of October 7, 2021, from counsel for Woods, this project has been completed and $125,250.54 was distributed to Horizon before the date of the receivership.  The final accounting has not been completed.  The remaining funds total $9,101.05 and the Receiver was informed that those funds will go to pay taxes, resulting in no value for the Receivership Estate |
| RE PROP# 33 | This asset reflected a loan that was made to Horizon Private Equity, LLC that was added based on information provided by John Woods on 10-15-21. Loan documentation was provided on 10/21/2021. The Note is dated 8/31/2020 & no payments had been made.  The current value reflects a negotiated settlement that the Receiver submitted for Court approval after the settlement funds were received.  On June 12, 2023, the Court entered an Order approving the settlement, DE 413. |
| RE PROP# 34 | Rent collected post-Receivership for Greenville, KY office leased to Southport Capital.  This property has been sold |
| RE PROP# 35 | Rent collected post-Receivership for Atlanta Office from Southport Capital.  This property has been sold. |
| RE PROP# 36 | On 5/20/22, the Court entered an Order allowing for the redemption of the Receiver's interest in this entity for $112,535.  This asset was formerly party of The Shoppes of Valley Brook, LLC.  A deed was recorded transferring ownership of a parcel at 5925 Hixson Pike  from The Shoppes to this entity in November, 2021.  The value listed reflects an appraisal of the underlying real property that was done in 2019. |
| RE PROP# 37 | Turnover of funds in Southport Capital's checking account that were deposited to Sale Funds Account. |
| RE PROP# 38 | Pursuant to the settlement with Southport Capital and IBERIABANK, the Receivership Estate is entitled to $1,125,000 due on a  Settlement Agreement between Clay Parker & Southport Capital.  The first payment was wired to the Sale Funds Account on 7/1/2022.  A second payment was received on 1/4/2023 and transferred to the Sale Funds Account. |
| RE PROP# 39 | This asset reflects a refund of part of the April 2021 deposit for distributions to investor accounts that was not allocated by Woods. |

# Form 1
# Individual Estate Property Record and Report
## Asset Cases

Page: 6

**Case No.:**   21-03413

**Case Name:**   RECEIVER'S ACCOUNT, ESTATE OF HORIZON
PRIVATE EQUITY, III, LLC

**For Period Ending:**   12/31/2023

**Trustee Name:**   (530670) A. Cotten Wright

**Date Filed (f) or Converted (c):**   09/01/2021 (f)

**§ 341(a) Meeting Date:**

**Claims Bar Date:**

| | | |
|---|---|---|
| RE PROP# 40 | Settlement payments from Net Winners | |
| RE PROP# 41 | Refund check from FINRA referencing "TERMINATION REFUND CRD 113364" | |
| RE PROP# 42 | Montana 2022 income tax refund for Southport Capital. | |

**Major activities affecting case closing which are not reflected above, and matters pending, date of hearing or sale, and other action:**

**Initial Projected Date Of Final Report (TFR):**

**Current Projected Date Of Final Report (TFR):**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **CIVIL ACTION NO. 1:21-CV-3413-SDG** |
| **Plaintiff,** | |
| **v.** | |
| **JOHN J. WOODS, ET AL.,** | |
| **Defendants.** | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that copies of the foregoing *Receiver's Tenth Report* were served on those parties who have requested electronic service in this case through the Court's electronic noticing system. Notice will also be provided to victim-investors by way of email or by United States first class mail in the event that email addresses are not available. In addition, this *Receiver's Tenth Report* will be available at horizonreceivership.com.

This is the 16th day of January, 2024.

> */s/ A. Cotten Wright*
> A. Cotten Wright (NC Bar 28162)
> Receiver and Attorney for Receiver
> Grier Wright Martinez, PA
> 521 E Morehead Street, Suite 440
> Charlotte, NC 28202